## TYRUS BELL et al. *v.* NEIL MORRISON.

Where there were several defendants in a suit, and on the trial after the evidence on both sides had been adduced, the defendants moved the court that the jury should retire and ascertain whether, upon the evidence, they should not acquit one of the defendants, in order that he might be a witness for his codefendants, which was granted at a term of the court preceding the final trial of the cause; and the jury returned a verdict of guilty, but assessed no damages against that defendant : *Held*, that this proceeding being taken at the instance of the defendants themselves and for their benefit, no part of the object being to render a judgment for any amount for the plaintiff, it cannot be considered a judgment against that defendant.

This mode of proceeding to render that defendant a competent witness for his codefendants, was irregular and improper; and the proper course would have been, for the court to direct the jury to acquit him, if there had been no evidence at all tending to inculpate that defendant, in order that he might be admitted to testify.

But where there is any evidence tending to charge the defendant in such a case, whose testimony is desired, or in a doubtful case, upon the testimony, such a direction could not properly be given to the jury.

Although such a proceeding was irregular, the defendants are not to be permitted to complain of it because it was done at their own instance, and in nowise for the benefit of the plaintiff : *Held*, therefore, that such defendant would be an incompetent witness for his codefendants.

Acts and declarations of one of the parties during the continuance of a difficulty, and before they had entirely separated, showing circumstances of aggravation, are admissible against all the parties implicated.

It is a well-settled rule, that in actions for injuries to the character or to the person, the jury are not restricted in giving damages to the actual positive injury sustained by the plaintiff, but may give damages as a punishment against the defendant.

This rule can only be properly and effectually applied by taking into consideration all the circumstances whether of aggravation or mitigation of grievances complained of, the situation of the parties as to wealth, character, and influence.    *Held*, that if the principle of exemplary damages be sound, it is proper to inquire into the pecuniary condition and circumstances of the defendant.

In actions for the joint tort of the defendants, who join in their pleas, it is held to be proper for the jury to assess damages against all the defendants jointly, according to the amount which in their judgment the most culpable of them ought to pay; for what would be competent testimony with that view as to one, would be competent as to all, the defendants.

The previous declarations of the plaintiffs, which should not have been made

Bell et al. *v.* Morrison.

with reference to the difficulty as to what was his object in going to the place, are clearly competent evidence.

The court below was correct in refusing the first, second, third, and fourth instructions asked by the defendant.

In cases of this character, the matter of damages rests almost unrestrictedly with the jury; and unless they are so extravagant as to induce a suspicion of improper conduct, the court will not interfere with the verdict.

The introduction of testimony to show the quantity and value of the property of one of the defendants with a view of increasing the damages, was illegal, — FISHER, Judge, dissenting.

IN error from the circuit court of Noxubee county; Hon. John Watts, judge.

Neil Morrison sued Tyrus Bell, William Bell, Vincent Bell, Bird Farmer, John Dawson, and Matthias Crotty, in the circuit court of Noxubee county, in an action for damages for an assault and battery committed on him by the defendants. The suit was subsequently discontinued as to Vincent Bell.

The defendants pleaded, "not guilty," *molliter manus imposuit*, and *son assault demesne*, all, in short. A verdict of $1,200 was found by the jury for the plaintiff.

The testimony is conflicting; but it seems the parties were gathered at a grocery on Christmas day, A. D. 1847, and they were drinking, and a difficulty first took place between Tyrus Bell and plaintiff, in which Bell wounded said defendant with a bucket, and afterwards several other fights occurred during the day, between the plaintiff on one side and the defendants on the other, in which all the defendants either struck the plaintiff or were urging on those who did strike him. It was in proof that plaintiff was badly bruised so that he was confined to his room for some time, a portion of the time was delirious in consequence of the wounds received from the defendants, and for several weeks was unable to attend to his business, — that it was several months before his wounds healed up; and it was also proved that plaintiff (Morrison) went to the grocery for the purpose of getting cotton to load his flat-boat.

The plaintiff proved that Tyrus Bell was a man of considerable property. This is about the substance of the testimony. The charges of the defendants below, refused by the court, are contained in the opinion of the court.

The jury found a verdict as above for the plaintiff, and the defendants moved the court for a new trial, which was refused, and they then prayed a writ of error to this court.

*G. L. Potter* for appellants.

Morrison sued Tyrus Bell, William Bell, Vincent Bell, Bird Farmer, John Dawson, and Matthias Crotty, for assault and battery. Suit discontinued as to Vincent Bell. Defendants pleaded not guilty, *molliter manus imposuit,* and *son assault demesne,* — all, in short. There was a verdict of $1,200 against all the defendants.

The testimony was somewhat conflicting, but it is manifest there is no proof to justify the verdict. It seems, the parties were gathered at a grocery on a Christmas frolic; that the difficulty commenced in the grocery, and terminated out of it.

Pride, a witness, shows how the fight begun. The parties were in the backroom of the grocery, and had been drinking and chatting. After a time, T. Bell proposed to get another bucket of liquor for the company, when Morrison objected, and said every man should buy and drink his own liquor. Bell replied, that he did not care a damn, and immediately passed out to the front door. Morrison and one Thomas immediately followed him, and came up with him at the front door. " Thomas immediately struck, and both Thomas and Morrison jumped upon said Bell." We thus learn that plaintiff and Thomas commenced the fight, by an assault on T. Bell — two to one. The witness says further, that, as soon as it was said that T. Bell was in a fight, his son, William Bell, and his nephew, Vincent Bell, rushed in to his assistance, and the fight became general. He says that Morrison got upon and scratched Bell, until he was pulled off, and then seized a bedpost and attempted to strike Bell, while Thomas had him down. He did not see Dawson or Crotty strike plaintiff. There was a second fight in the backroom, as to which witness does not particularize.

Thomas seems to think that the difficulty began differently. He says that Bell got mad and struck him, and got him down, and Morrison pulled Bell off; but this witness shows how in-

Bell et al. *v.* Morrison.

competent he was to notice particulars on that occasion. He says, " I was drunk; do not remember what we were doing; I do not remember whether it was in the morning or evening; I do not know what happened between us."

Hawes, a witness, says he saw the Bells and Crotty after the difficulty with Thomas they all had sticks. That T. Bell asked where was the d—d old rascal, some one replied that he was in the house, and T. Bell said let us go in and kill the d—d old rascal, and they went in. Witness heard a noise in backroom, went in and first saw Vincent Bell strike Morrison with a board. T. Bell struck him with a stick. The parties went out, witness following slowly; after getting out, saw T. Bell with a bush, and saw William Bell knock Morrison down. Saw no fight out of doors. When Morrison started home on his mule, saw T. Bell strike at him with a brush. Did not see Crotty or Dawson take any part in the fight, or strike a lick. Thomas was very drunk.

M'Clanahan says that, after the first fight, he saw T. Bell, and remained with him; was with him before the time that Hawes speaks of, and saw Hawes. Witness had T. Bell by the hand, and knows he did not use the words imputed to him by Hawes. Witness was cool and sober, and went into the house with T. Bell, into the backroom where the fight had commenced, not knowing there was any one there. When they went in, Morrison was standing by the fire washing the blood from his face. When Bell went in and Morrison saw him, " they seized each other simultaneously." Morrison threw Bell, and got on him, and witness parted them. There was a fight afterwards out of doors, no more fighting in the house. Morrison then went out, and Bell remained in the room with witness; during that fight in the house no lick was struck. Witness held Bell, after he parted them, and knows he did not strike. After Bell and witness had remained a few moments, they went out. Witness adds, " when I got out I saw William Bell knock Morrison with his fist; here the difficulty stopped. Tyrus Bell did not strike Morrison after he got out of doors; this I know, because I went out of doors with him and held hold of his hands all the time until the difficulty stopped. I know and positively

state that Tyrus Bell did not strike plaintiff a single lick either in the house or out of doors." When the first difficulty occurred, witness was not present. Thomas was very drunk. Neither Crotty or Dawson struck a lick either in or out of the house.

Hinkle first saw Thomas run out of the house, and heard noise of a fight in the backroom, went in, and saw "them" on the floor in a pile; T. Bell on the floor; defendants engaged in fighting Morrison; Morrison went, or was pushed out; T. Bell pursued, and other defendants followed. Witness caught T. Bell and pulled him back into the room to the fire, and they sat down. There was a cry of kill him, and Bell went out and struck Morrison on the head, and one and another of defendants would go and strike him, &c. "All the defendants were engaged out of doors in fighting Morrison." On cross-examination, he says that neither Dawson or Crotty struck a blow. It was a very short time between the first and second fights. Thomas was not very drunk. T. Bell struck Morrison four or five times in the house, and four or five times out of it.

M:Clanahan says this witness was in liquor, and the probability is, that he was too drunk to know what happened, and proves that Hinkle had admitted the falsity of his statement that the parties were all on the floor in the backroom. Yet Hinkle says he drank none.

Gray proves that plaintiff said he would have killed T. Bell, on the first fight in the backroom, if he had not been prevented.

Hawes did not see Hinkle stop T. Bell and carry him in the backroom, as that witness avers, but, as witness passed out on that occasion, he saw T. Bell outside.

Wharton saw T. Bell strike Morrison, outside of house, two or three times.

The proof shows that plaintiff was badly bruised, but shows no special damage.

Tyrus Bell was intoxicated, as were most of the parties.

It is plain, from the whole proof, that plaintiff and Thomas commenced the fight with Tyrus Bell. Pride is the only witness who saw the first assault, and he proves that it so began. The other witnesses admit that they did not witness its beginning.

Now there was a plea of *son assault demesne*, by consent, and issue in short. What was that issue? I infer that it was a denial *de injuriâ*, and not a confession of the plea and an averment of excessive beating, which could be the only other response to that plea. In such cases, issue in short is always understood to mean a denial, and not a confession and avoidance of the plea. If to a plea of *son assault*, plaintiff would show excessive beating, he must so reply specially. *Dale* v. *Wood*, 17 Eng. Com. Law, 69; 2 Stark. Ev. 824, 5, 6, 7; *Brown* v. *Bennett*, 5 Cow. 185; 1 Whea. Selwyn, 36.

Of course such replication would conclude with a verification, and an issue would be tendered in the rejoinder. As the words issue in short import an issue made by the replication, we must understand that plaintiff denied making the first assault.

What does the proof show in support of this plea? As I have said, it shows that plaintiff did make the first attack on Tyrus Bell, and the verdict should have been for him. So it should have been for his son, William Bell, who interfered to defend his father.

There is, therefore, an erroneous verdict, and it must be wholly vacated.

But, it may be said, there were three several fights. I think the proof shows the contrary, and that the whole was the continuation of one drunken quarrel.

If it was otherwise, where is the proof to convict all of the defendants, and support the verdict?

To sustain it, plaintiff must rely solely on Hinkle, whose testimony is contradicted by both M'Clanahan and Gray. And how does Hinkle implicate Dawson? He says that neither Dawson nor Crotty struck a blow, but that Crotty urged on the fight in the backroom, and Dawson cried "go it, my Bell." The proof shows that this was the second scuffle between plaintiff and T. Bell, and this was begun, as M'Clanahan shows, by Morrison's clinching Bell. It was a mutual affair between them, and the mere exclamation of Dawson, or urging of Crotty, could not render either guilty, in such a case. Nor could a verdict go against Tyrus Bell because of such a con-

test. Then as to the matter out of doors, the proof shows that all of the defendants did not participate in it, and if the verdict against all, was based upon that part of the fight, it was wrong. There is no pretence that Dawson or Crotty participated in it. It is true that Hinkle, on direct examination, seeks to implicate them; but he expressly exculpates them on cross-examination.

II. The court erred in refusing charges asked for defendants.

Their first charge was, that if Morrison began the first fight, and the whole affray was but a continuation of the fight so begun, they should find for defendants.

If such was the fact, and it was for the jury to decide, it is plain that the verdict should have been for defendants, on the plea of *son assault*. Under the issue upon that plea, the sole question was, Whether plaintiff began the fight.

The second charge was the same, except that it related to Tyrus Bell only.

Their fourth charge was, if the fights were separate and distinct, and any one of defendants was engaged in them only in self-defence, the jury will find for such defendant. Surely, plaintiff was entitled to no recovery against a party who acted merely in self-defence.

III. The damages were excessive. There was no proof of any special damage, and it was not a case for vindictive damages. Public policy, morality, and justice, alike require that a party to a drunken revel, who has provoked a fight with his boon companions, shall not be heard to demand smart-money for bruises received under such circumstances. And it is clearly shown that plaintiff and Thomas did commence the assault.

The parties were intoxicated, actuated by whiskey and not by malice; and, in such a case, smart-money should not be awarded.

Gray proves the admission of plaintiff, that he would, in the first fight in which he was clearly the aggressor, have killed Tyrus Bell, if he had not been prevented. Shall a plaintiff, who thus admits murder in his heart, demand extraordinary damages, on account of society, for bruises received by him in an affray provoked by himself?

Admit that the others were guilty, for what acts of Crotty, or Dawson, could plaintiff demand this recovery of $1,200?

*T. J. Wharton* for appellee.

The pleas in this case are, 1st. Not guilty. 2d. *Son assault demesne.* 3d. *Molliter manus imposuit.*

Let us briefly consider the nature of the second and third pleas, the matters they put in issue, and the proof requisite to sustain them. It will be noted by your honors, that these pleas were not put in technical form; they were simply, by name, stated to be the matters pleaded by the defendants. The second plea must be held to admit the battery, and other injuries complained of in the declaration, and justify them on the ground that they were inflicted in resistance of an assault first made by the plaintiff. They must not be unreasonable, or disproportioned to the character of that assault, but simply the force requisite to defend and repel the plaintiff's assault. The defendant cannot, in any case, justify an actual beating and wounding, unless he shows in his plea that force was used, or attempted, on the part of the plaintiff; but still, he may justify the beating, that is to say, what in law amounts to a battery, by way of *molliter manus imposuit.* Again, a justification by way of *molliter manus imposuit,* admits a battery. 3 Ch. Pl. 1067, note a.

This plea merely puts in issue matters in excuse, as, for example, in the precedent contained in Chitty, and Saunders, "the defendant says, that the plaintiff, just before the said time when, &c., to wit, on the day and year aforesaid, with force and arms made an assault upon the defendant, and would then have beaten and ill treated the defendant, if he had not immediately defended himself against the plaintiff. Wherefore the defendant did then defend himself against the plaintiff, as he lawfully might do, for the cause aforesaid; and, in so doing, did necessarily and unavoidably a little beat, wound, and ill treat the plaintiff, doing him no unnecessary damage on the occasion aforesaid. And so the defendant saith, that if any hurt or damage then happened to the plaintiff, the same was occasioned by the assault so made by said plaintiff, on him the said defendant, and in the necessary defence of himself against said plaintiff."

In this plea are involved, 1st. An admission of a battery. It is true, it may not be to the extent of the injury complained of

in the declaration. 2d. That the battery was in resistance to the assault of the plaintiff, first made on him, the defendant. 3d. That the battery thus inflicted was in the necessary defence of the defendant from said assault of the plaintiff, and was proportioned to the character of that assault. All of these matters of defence are affirmatively alleged in the plea, and I maintain, under the state of the pleadings, must be affirmatively established. The defendant assumes the *onus probandi.*

To escape from this objection, the adverse counsel attempt to raise a technical point, as to the character of the plaintiff's replication to that plea. The record shows, that both the plea and replication are in short. It states, the defendant pleads " not guilty," *son assault demesne,* and *molliter manus imposuit,* and issue in short signed by the counsel for both plaintiff and defendants. The counsel asks, what was that issue, and replies, " that it was a denial *de injuria,* and not a confession of the plea, and an averment of excessive beating, which could be the only other response to that plea."

The authorities lay down the rule to be, " that it is not necessary to new assign to the plea of *son assault,* &c. Where the plaintiff alleges and proves an assault and battery, and the plea alleges matter to justify both, the defendant must prove as much of his plea as will justify both."

The issue submitted to the jury must be understood to mean an affirmance on the one side, and a denial on the other, of all the matters set up in that plea as grounds of defence. The plea itself was in short, as the issue and joinder. Still both parties seem to have understood the matter. The objection now made was not thought of on the trial in the court below. The plaintiff did introduce testimony to show excessive beating, which, according to the view of Mr. Potter, (although differing in that from the counsel on the same side below, who did not object,) was inadmissible. If the position were ever so well founded, that in such case issue in short implies a denial *de injuria,* and not a confession and avoidance of the plea, he cannot be heard to urge to the exclusion of evidence not objected to on the trial before the jury. So, on the other hand, counsel for plaintiffs in error, in the court below, introduced testimony

to show, that at least a portion of the defendants committed no battery whatever, and this notwithstanding all of them had pleaded *son assault demesne*, and *molliter manus imposuit*. I take it, as the whole testimony has been embodied in the bill of exceptions, this court will not now consider objections to the admissibility of evidence predicated upon the mere form of the issue, which were not made in the court below. That evidence being in without objection, covers all technical objections on my side that they were estopped, one and all, from denying that they had committed a battery by the plea they had filed; and on their side, that we could not prove excessive beating, under the issue joined. The verdict and judgment cover all defects of that kind, and this court, having the whole facts before them, are to determine whether, upon those facts, the verdict is right or wrong. If it were a question this court could inquire into now, as no objection was made to the admission of the evidence of the plaintiff below, I would be glad to know upon what it is assumed that issue in short to the plea of *son assault* in short, " is always understood to mean a denial, and not a confession and avoidance of the plea." I know it is laid down in all the books on pleading, " that where the plea is untrue, and consists merely of matter in excuse, as *son assault demesne*, the plaintiff should reply *de injuria*, which puts in issue all the allegations in the plea." Yet it by no means follows that this court will infer that the plaintiff did not adopt this instead of the denial. Indeed, as it would have been the correct rule of practice and pleading, and as in the trial below it was recognized, as shown by the introduction of evidence proving an excessive beating, and not objected to by plaintiffs in error, we must infer that it was considered by court and counsel on both sides, as a reply *de injuria*. If right in this, the defendants below were bound to prove that it was plaintiff's own assault in the first instance, and that the beating inflicted was in their own necessary defence in repelling that assault. Have they done this? Let us briefly review the testimony.

It seems from the evidence that the defendant in error visited the place where the grocery is situated, on the day the difficulty occurred, on business. There is no pretence to say

that he went there from any design to engage in a difficulty. One of the witnesses swears that some two weeks previous to his going there, he stated to him he intended to go there on the very day he did go, to engage cotton for shipment on his boat. He is not shown to have had any previous difficulty, or cause of quarrel with any of the plaintiffs in error. The first difficulty occurred in the backroom of the grocery, between Tyrus Bell and the witness Thomas; Bell got mad with Thomas; Thomas started out; Bell struck him, and got him down; defendant in error pulled Bell off Thomas; Bell got up, ran out at the back door; did not see Morrison strike Bell; saw nothing in his hands; no intimacy between Morrison and Thomas; Morrison showed no disposition to get in a fight. The next witness for defendant in error, Hinkle, states that he saw Thomas run out of the house. Witness went in; saw them all on the floor in a pile; M'Clanahan was trying to part them; had hold of William Bell; tried to pull him away. The plaintiffs in error, T. Bell, W. Bell, V. Bell, and Farmer, and Crotty were urging on the fight; V. Bell threw a bench or chair at Morrison; when Morrison got up, T. and W. and V. Bell all struck him with sticks; Dawson jumped up and hollowed "Hurrah for Bell; go it my Bell;" all the Bells, Crotty, and Farmer had sticks; Morrison went out, or was pushed out of the room; showed no disposition to fight. The Bells, Crotty, Dawson, and Farmer followed him out of doors; witness caught hold of and reasoned with T. Bell; got him back in the room; heard hollowing in the yard, "Kill him, kill him;" T. Bell then rushed out; as he passed out at the front door, he struck Morrison on the head, who was standing near the outer door, saying nothing; sometimes one and then another of the plaintiffs in error would strike him with sticks on the head; one of them knocked him down; heard Farmer say "he had given him a *whapper*," with a stick held in both hands; all this time, Morrison did not attempt to fight; all the plaintiffs in error were engaged out of doors in fighting Morrison; no one assisted Morrison; witness declared he would not stand and see a man murdered; no one offered to assist him to part them; after the fight was over, T. Bell objected to any one washing Morrison's head and face,

which were dreadfully cut; said no friend of his would get water to wash the damned old rascal; after Morrison had mounted his horse to leave, T. Bell struck at him. Harris, another witness for defendant in error, saw all the Bells, and Crotty, after the difficulty with Thomas; all had sticks; T. Bell asked where was the "damned old rascal;" was told he was in the house; said "let us go in and kill the damned old rascal;" they all went in; all urged on the fight; saw V. Bell strike Morrison with a board; T. Bell struck him with a stick; saw William Bell knock him down; first lick he saw struck was by T. Bell, on Morrison's head; V. Bell struck him with a stone; M'Clanahan, the only man making peace. J. Wharton, another witness for defendant in error, saw Morrison come out of the house very bloody; leaned against the side of the house bleeding; T. Bell met him with a stick; Morrison caught hold of, and took the stick from him; Morrison was then knocked down by William Bell with his fist; Morrison showed no disposition to fight.

Witness proved that he, Morrison, was very badly hurt; was delirious from his wounds; was confined a week before he could travel. Witness waited on him; dressed his wounds for four weeks; some of the cuts were to the skull-bone.

Witness Haslip saw Morrison in February, near two months after the difficulty; his head still very sore, and opened some of the wounds which discharged a great quantity of matter; his head still sore in March. The evidence on the part of the plaintiffs in error contradicts some of the statements of the witnesses for the defendant in error. There is much conflict between witnesses; it was therefore a case peculiarly for the jury.

There are circumstances of marked atrocity on the part of the plaintiffs in error. A more brutal, murderous, and cowardly assault, I never heard or read of. There was the most conclusive proof of the participation of all the plaintiffs in error; some in beating, others in encouraging, all in preventing any one from rescuing Morrison, or in any way interfering. On the weight of evidence, there can be no possible ground of complaint with the verdict.

A great many bills of exceptions to points of evidence were

taken.   I do not deem them of sufficient importance to call for remark.   It was objected, and exceptions reserved, that Dawson should not have been prevented from testifying.   The plaintiffs in error themselves, moved that he put on his trial separately, as the question only of guilt or innocence, that he might be used as a witness, if innocent, for the other.   He was found guilty.   They were estopped afterwards from insisting that he should be examined.   There was no error committed by the court in refusing to allow him to be examined.

Now, is it not idle and ridiculous to pretend, 1st, that Morrison originated the assault; that he struck the first blow ?   Here was a crowd assembled, all friendly to the plaintiffs in error. A father and two sons, the Bells, Crotty, Dawson, and Farmer, all confederated.   Is it probable that Morrison, under such circumstances, would have provoked a difficulty ?   But if all that, as proved by witnesses for defendant in error as to the origin of the assault, is untrue, so far as relates to the person who begun it, — now look to the actual and terrible injuries inflicted upon Morrison.   Who amongst the witnesses has stated that either of the plaintiffs in error were hurt in the slightest degree ?   Here are five men, all engaged in beating one man with sticks, and yet it is argued that it is simply a drunken brawl, commenced by the defendant in error ; nobody seriously injured, and no case for exemplary damages, and that a verdict of $1,200 damages is excessive.   Even if Morrison had begun it, the force employed in repelling, was wholly disproportioned to the attack, both in the number of persons engaged in repelling, and the damage inflicted.   If five men, all armed with bludgeons, cutting open to the skull the head of a man who·shrank from them, fled and showed every disposition to avoid a fight, be a case falling under a plea of *son assault demesne*, or if this be a *molliter manus imposuit* demonstration, we had better get rid, as soon as possible, of all law upon the subject.

There were at least three distinct fights ; different parties were sometimes engaged, but all the plaintiffs in error were concerned in one or more.   There is no error in refusing the first charge of plaintiffs in error in view of the pleadings and facts.   The facts very clearly proved that if he conceded that

Bell et al. *v.* Morrison.

Morrison made the attack, no injury resulted from it, and under the pleadings only the force requisite to repel the attack could be justified. So that they may have all been one fight and Morrison may have commenced it, and still, if the plaintiffs inflicted upon him cruel and inhuman punishment wholly unnecessary and disproportioned to the attack, and not demanded by their own defence, still the court could not instruct them to find for the plaintiff in error. The second was properly refused on the same ground and for the same reasons. In fact the first, second, third, and fourth, were all properly refused for the reasons stated.

No instructions whatever were asked by defendant in error. If there were error, however, in any one of the charges, yet if the verdict is correct upon principle and is fully warranted and sustained by the evidence, this court will not disturb. This point has been too often decided to make it necessary to cite the cases. Where substantial justice has been done, and the verdict is supported by the weight of evidence in a case, and it is unlikely that a different result would be arrived at on a new trial, this court will not interfere, merely because of error in some charge of the lower court on an abstract question. All the charges which were refused by the court, we think, embraced points which the plaintiffs in error had estopped themselves from setting up by their pleas.

The conduct of the plaintiffs in error was characterized by a brutality, cruelty, and cowardice; that of the defendant in error by a patience under the most severe personal injuries which called upon the jury for the sternest administration of the law. I think $1,200 was a small price to be made to pay for the injuries inflicted upon the defendant in error. I doubt whether the learned counsel who so earnestly insists that the damages are excessive, would feel himself compensated for having several gashes upon his head reaching to the skull, and several stalwart bullies, armed with bludgeons, belaboring him.

Mr. Justice HANDY delivered the opinion of the court.

This was an action for an assault and battery, brought by the defendant in error against the plaintiffs in error in the cir-

cuit court of Noxubee county. The defendants below pleaded three pleas in short by consent. 1st. Not guilty. 2d. *Molliter manus imposuit.* 3d. *Son assault demesne,* upon which the plaintiff took "issue in short by consent."

The testimony in the record is prolix, and the particulars of the difficulty between the parties are stated at length, and not without contradictions in many respects between the witnesses. It is only necessary, in considering the case as presented for our determination, to speak in general terms of the facts appearing by the record.

It appears that the plaintiff below, who resided in Winston county, went to a grocery shop in Noxubee county, on Christmas day, 1847, where he met with the defendant, Tyrus Bell, and one Thomas, and the parties indulged in drinking ardent spirits. A misunderstanding occurred between Bell and one Thomas, and a fight between them ensued, in which Bell got Thomas down and was upon him, and that Morrison pulled him off. Thomas left the place, which was the backroom of the house, and shortly afterwards a fight was commenced between Bell and Morrison, without the latter's seeking. They were separated, and, in a short time, Bell, with the defendants William Bell, Vincent Bell, Dawson, Farmer, and Crotty, renewed the difficulty with Morrison in the backroom of the place, which was continued in other parts of the premises at short intervals, during which he was severely beaten, the defendants being friends of each other, and he being a stranger in the place. It was shown that the defendants were armed with sticks, with which the plaintiff received several blows and severe wounds on the head, that he was knocked down with a stone by one of them, that he was delirious, in consequence of the wounds he received on his head, for a week, and confined so as to be unable to return to his home, and was unable to do his work for several weeks, and that his wounds were not healed in March following ; that he was alone and unaided by any one, except persons who interfered only to prevent further violence to him ; that several of the defendants struck him, the others encouraging it, he doing nothing to provoke it. In some of these particulars the testimony is conflicting, but the evidence tends to establish

Bell et al. *v.* Morrison.

them, and it is clear that the blows inflicted upon him were without sufficient justification, and the violence great and cruel.

On the final trial, a verdict and judgment were rendered for the plaintiff for $1,200 damages; the defendants moved for a new trial, which was refused, and thereupon this writ of error was sued out.

During the progress of the cause, several bills of exception were taken to the action of the court, presenting points of error, which we will proceed to examine.

First. It appears that on a trial of the case which took place at December term, 1849, which was not the final trial, after all the evidence on both sides had been adduced, the defendants moved the court that the jury should retire and ascertain whether, upon the evidence, they should not acquit the defendant Dawson, in order that he might be admitted as a witness for his codefendants. The motion was granted, and the jury returned a verdict of guilty against the defendant Dawson, but assessed no damages; and thereupon the court ruled that he should not be discharged, but should be put upon his trial with his codefendants. The trial was then proceeded with against all the defendants, except Vincent Bell, as to whom the plaintiff dismissed the suit, and the case was argued and submitted to the jury, who, being unable to agree, were discharged by consent of parties, and a new trial awarded. When the case came on for final trial at December term, 1850, the plaintiff moved to strike out a plea filed at that term by the defendants, Tyrus and William Bell, Farmer, and Crotty, setting up the proceeding as to the defendant Dawson above stated, as a judgment against him, and relying upon it as a bar to a recovery against the other defendants. This motion was sustained, and the defendants excepted, which constitutes the first bill of exceptions.

It is insisted in behalf of the plaintiffs in error, that the proceeding at December term, 1849, amounted to a judgment of recovery against Dawson, which operated as a discharge of the other defendants. We do not consider the proceeding as a judgment against Dawson. It was manifestly but an inquiry as to whether he should not be discharged in order that he

might testify for his codefendants.   It was taken at the instance of the defendants, and for their benefit, no part of the object being to render a judgment in behalf of the plaintiff for any amount.   The mode of proceeding adopted by the court to render the defendant a competent witness was irregular and improper.   If there had been no evidence at all tending to inculpate the defendant Dawson, it would have been competent for the court to direct the jury to acquit him in order that he might be admitted to testify.   1 Greenl. Evid. § 358.   In such case, the direction is peremptory, and the verdict is rendered accordingly, as a matter of course.   But when there is any evidence tending to charge the defendant, such a direction could not properly be given, much less in a case of doubtful evidence, should the jury be directed to retire and determine whether or not a case of liability was proved to their satisfaction against a particular defendant, in order that he might be discharged and rendered competent as a witness for his codefendants.   But although such a proceeding was irregular, the defendants are not to be permitted to complain of it, because it was done at their own instance, and in nowise for the benefit of the plaintiff. Nor will they be permitted to give to it a greater effect than was intended at the time, which was simply that of an inquiry, whether the defendant was guilty or not, with a view to his competency as a witness.

It was not improper, therefore, to strike out this plea. Secondly. These defendants then offered Dawson as a witness in their behalf.   The plaintiff objected, and the court sustained the objection.   For the reasons above stated, we think there was no error in this.   For all the substantial purposes of the suit, Dawson was still a party defendant to be proceeded against for the recovery of damages against him and his codefendants.   He was, therefore, clearly incompetent as a witness for the defendants.

The third and fourth bills of exception present objections to certain testimony admitted on the part of the plaintiff.   This testimony was, that immediately after the difficulties had ceased, the witness and another person were about to get water to wash the blood from the plaintiff's face, when the defendant, Tyrus

Bell et al. *v.* Morrison.

Bell, prevailed upon them not to do so, using abusive language towards the plaintiff, and that as the plaintiff was about to quit the place, Tyrus Bell struck at him on his mule.

The defendants were sought to be charged as participators in the trespass against the plaintiff, and the evidence tended to show a combination between them to commit the injuries complained of. The acts and declarations of one of the parties, during the continuance of the affair, and before the parties had entirely separated, showing circumstances of aggravation, were admissible in evidence against all the parties implicated. 1 Greenl. Evid. § 111. The conduct of Bell, in this particular, was exhibited before the difficulties had entirely ceased, and while the revengeful feelings of the defendants were still aroused, and it was, therefore, competent to the plaintiff to show it as part of the *res gestæ.*

The fifth bill of exceptions is taken to the admission of evidence, on the part of the plaintiff, showing the quantity and value of the property owned by Tyrus Bell.

This evidence could have been introduced for no other purpose than to justify the jury in increasing the damages that might be awarded to the plaintiff. The plaintiffs in error insist that the wealth of the defendant furnished no proper criterion for assessing the damages caused by the injury to the plaintiff; and further, that evidence upon that point was improperly admitted, as to the other defendants who were affected by the damages assessed.

It is settled by authorities almost without exception, in England and in the United States, that in actions for injuries to the person or to the character, the jury are not restricted, in giving damages, to the actual, positive injury sustained by the plaintiff, but may give damages as a punishment against the defendant; that not only may the plaintiff receive compensation for the injury inflicted upon him, but that the interest of society may be regarded, and such damages may be awarded as will tend to operate by way of example, and to deter others from similar acts of violence and oppression. See Sedgwick on Damages, 39 *et seq.*, and cases there cited.

If this rule, which is sanctioned by so many high authorities,

be just and salutary, it can only be properly and effectively applied by taking into consideration all the circumstances, whether of aggravation or mitigation of the grievance complained of, the situation of the parties as to wealth, character, and influence, and awarding such damages, in view of all these circumstances, as will both render reparation to the plaintiff, and act as an adequate punishment to the defendant.   The damages which would operate as a proper punishment to one man might be inadequate to that effect upon another, by reason of their difference in pecuniary condition; and on the contrary, a verdict that would be scarcely regarded by a wealthy man, might be ruinous to a poor man.   Hence the necessity, if the principle of exemplary damages be sound, to inquire into the pecuniary condition and circumstances of the defendant, in order, if the jury consider the case worthy of being made an example of, that the verdict may at once be adequate to the injury done to the plaintiff and to society, and just and reasonable to the defendant.

The action was for the joint tort of the defendants, who joined in their pleas. · In such a case, it is held to be proper for the jury to assess damages against all the defendants jointly, according to the amount which, in their judgment, the most culpable of them ought to pay.   2 Greenl. Evid. § 277.   Whatever, therefore, would be competent evidence with that view as to one, would be competent as to all of the defendants.   Otherwise a wealthy defendant, who was principally implicated in a wrong of this character, might escape the payment of just and reasonable damages, by having others, without character or property, associated in the unlawful act.   We therefore think that this evidence was properly submitted to the jury.

The sixth bill of exceptions is taken to the admission of evidence of declarations made by the plaintiff, just before he went to the place where the difficulty occurred, that his purpose in going there was to get cotton to ship on his flat-boat.   This evidence was offered to show the absence of all improper motives on the part of the plaintiff, that he was in the pursuit of his lawful business, and that the scenes which occurred there were unpremeditated by him.   The declarations were made

previous to the occurrences of that day, and when they could not have been made in reference to them; for there can be no pretence, for aught that appears, that he anticipated the difficulty. Under such circumstances, his previous declarations, as to his object in going there, were clearly competent evidence. 1 Greenl. Evid. § 108.

The seventh bill of exceptions is founded on the instructions asked by the defendants, and refused by the court. The first is, " if the jury believe from the testimony that the fights proven were a continuation of the first fight, and that they were all the same fight, and that Morrison commenced the first fight, they will find for the defendants."

The second is the same in substance, except that it directs the acquittal of Tyrus Bell, if the facts are found as stated in the first instruction.

The third is, " if the jury believe from the testimony, that the fights proven were separate and distinct fights, and that Morrison commenced the first fight with Tyrus Bell, they will acquit Tyrus Bell."

The fourth is, " if the jury believe from the testimony, that the fights proven were separate and distinct fights, and that there were some of the fights that any one of the defendants did not take a part in, and fought in self-defence, they will find in favor of such defendant."

The two first instructions are upon the hypothesis that Morrison commenced the first fight, and that the others were but a continuation of it, with periods of intermission. Under the simple issue of not guilty, the defendants would have been liable, if the beating had been excessive and cruel, and not in self-defence. But the defendants pleaded *son assault demesne*, upon which the general issue was taken, which must be understood to mean the general replication *de injuria*, &c.; also the plea of *molliter manus imposuit*, on which issue was taken. If the beating by the defendants was excessive, beyond what was apparently necessary for their defence against the plaintiff's assaults, evidence upon that point was properly admitted, under these issues, and should have been considered by the jury. 2 Greenl. Evid. § 95, and cases cited. But though the evidence

showed that the beating was excessive, or even cruel and unmerciful, yet, under these instructions, the jury would not have been permitted to consider it, if the plaintiff commenced the first fight, and the defendants kept up the difficulty, however unjustifiably, but they would have been compelled to find for the defendants. Such is not a correct view of the law, and these instructions were therefore properly refused.

The same reason justifies the refusal of the third instruction. But it is altogether unsound as a legal proposition. It, in effect, announces the barbarian rule, that if Morrison commenced the first fight, the defendant Bell was thereby justified in attacking him again at pleasure, in separate and distinct fights from the first, and in using violent and cruel punishment at discretion. Such a principle could never receive the sanction of a court of justice.

The fourth instruction is obscurely expressed. We presume it was intended to state, that if the fights were separate and distinct, and there were some of them that any one of the defendants did not take part in, except in self-defence, the verdict should be for such defendant. If this be not its sense, it is difficult to interpret it, and its obscurity was a sufficient reason for refusing it. But if this be its meaning, it was properly refused, because, according to the rule declared in it, if there were some of the fights in which any one of the defendants did not take part, except in self-defence, such defendant should have been acquitted, though he was wrongfully engaged in another of the fights, and beat the plaintiff therein without justification or excuse.

The last ground of error assigned is, that the damages were excessive.

In cases of this character, the matter of damages rests almost unrestrictedly with the jury. The rule upon the subject is well stated by Judge Washington in *Walker* v. *Smith*, 1 Wash. C. C. R. 152, to be, that "the jury act without control on the subject of damages, because there is no legal rule by which they can be measured; and unless they are so extravagant as to induce a suspicion of improper conduct, the court will not interfere."

In this case the violence was great, and the injuries severe to

Bell et al. *v.* Morrison.

the plaintiff. The testimony as to the circumstances of justification or mitigation, was conflicting. It was for the jury exclusively to judge of the credit of the witnesses, and the weight of their testimony. If they gave full credit to the witnesses in behalf of the plaintiff, as it must be presumed they did, we cannot invade their province, and say, that they acted improperly, without evidence casting suspicion on their conduct. The veracity of the witnesses being thus settled, we think their testimony justified the damages awarded, and that the motion for a new trial on that ground was properly denied.

We are, therefore, of opinion that the judgment should be affirmed.

Mr. Justice FISHER delivered the following dissenting opinion.

As much as I am disposed upon all doubtful questions, to defer to the opinions of my brethren, I feel constrained to dissent, on the present occasion, to so much of their opinion as sustains the action of the court below, in admitting evidence to be given for the purpose of showing " the quantity and value of the property " of one of the defendants, with a view of increasing the plaintiff's damages.

The common law in this country is a rule of action only so far as it can be shown to rest upon the solid principles of reason, or sanctioned by immemorial usage, in regard to particular transactions. It is true that some of its rules are arbitrary, and are suggested and supported more by necessity than by reason. Some rule, in every case, is necessary in the administration of justice, and we naturally and involuntarily look to reason and common sense to supply us with one which will mete out exact justice to the litigants before the court. Experience has shown this to be impossible, except to a limited extent, in actions of trespass for injuries to the person, and many other actions, sounding merely in damages. The jury are, from necessity, clothed with a discretion in the estimation of the damages in all such cases, from the fact there is no definite and certain rule which can be laid down to guide them, with precision, to a result which will be exactly the amount of com-

8 *

pensation to which the injured party will be entitled, or ought to receive.   But the very fact that the jury are invested with this discretion, ought to influence the court to adhere the more rigidly to those rules of law which are certain and fixed; and by which the investigation must be conducted.

The action is brought to recover damages or compensation for injuries inflicted upon the person of the plaintiff by the defendants.   The declaration sets forth the nature and extent of the injury, and whatever constitutes part of the injury itself, or is a legitimate consequence of the defendants' acts, may be said to be competent evidence to go to the jury; that which would aggravate the injury, or make the wrong the greater, may be proved for the purpose of aggravating the damages.   And the converse of this rule may be stated as equally true, to wit, that which was no part of the wrong, which in no manner entered into the transaction, which did not, and which could not, in the least, tend to increase the plaintiff's suffering, or protract it to a greater length of time, ought to be entirely excluded from the investigation before the jury.

The evidence must always be appropriate to the issue joined between the parties.   We will suppose the issue here to have been upon the plea of not guilty.   The plaintiff, under this issue, proves the nature of the assault and battery committed on his person by the defendant, together with all the attending circumstances.   The defendant's pecuniary condition, to say the least, *primâ facie*, has no connection with the difficulty.   If the plaintiff desire to introduce evidence on this subject for the purpose of aggravating the damages, he ought certainly, first to show how the wrong itself was aggravated by reason of the defendant's property.

Take for example an illustration.   Suppose, at the close of the evidence appropriate to the issue, it should be manifest that the sum of $1,000 would be ample compensation for suffering of the plaintiff, both bodily and mental, for the anxiety of his family in his behalf, for his loss of time, physician's bills, and all other matters connected with or consequent upon the trespass, upon what principle of reason or justice can it be contended that he ought to have a dollar more?   But the investiga-

Bell et al. v. Morrison.

tion closes upon the merits; another springs up, outside of the issue, not for the purpose of giving the party the compensation to which he has shown himself entitled, or of proportioning the damages to the injury, but of estimating them according to the *ad valorem* principle. The court, in substance, says to the jury, that it is true that under the testimony applicable to the issue it appears that the plaintiff ought to be satisfied with a thousand dollars, but that since it has come to light that the defendant is a man of large property, that they may take that fact into consideration, and may increase the damages, or exceed the sum for actual compensation, to any amount that they may think proper, and that he will not disturb their verdict, as he has no power to do, unless it shall appear to be flagrantly wrong. It is true that this is not usually the language employed by the court, or, in every case of this kind, the manner in which the trial is conducted, but it is exactly in every instance the result which the plaintiff hopes to accomplish by such testimony.

For these reasons, I am of opinion that the court erred in admitting the evidence.

I am in favor, in all actions of this description, of the jury giving the plaintiff liberal damages, if he has shown himself entitled to them by his evidence. But let them be assessed upon correct principles. Let the court instruct the jury, that personal safety is a sacred right, and personal violence a great wrong; that as the law has given the injured party no other remedy or redress than a pecuniary compensation in damages, they ought to take into consideration the nature, extent, and minute circumstances attending the injury inflicted, and award such damages as will leave no doubt on the mind as to the sufficiency of the remuneration. The court should, at the same time, be careful to avoid every thing which can elucidate nothing as to the merits of the controversy, but will only tend to excite a prejudice in the minds of the jury, and consequently degrade the institution itself, and bring merited reproach upon the administration of the law. While, therefore, I am disposed to encourage the jury in a liberal assessment of damages, upon correct principles, I am, at the same time, in favor of excluding

from their consideration evidence admitted under a principle which is, in my humble judgment, a blot upon the jurisprudence of the country, and which may often be the source of a great error, but never of a good result.

The appellants by their attorney filed a petition in this case for a reargument, which was refused by the court to be granted.