# M'Bride *against* M'Laughlin.

5 W　375
f218　　20

*In an action of trespass for a wilful and malicious abuse of process and sale of the property of the plaintiff, he may recover vindicatory damages, although the meditated oppression was not intended for the plaintiff but for another.*

ERROR to the district court of *Alleghany* county.

This was an action of trespass by John P. M'Laughlin against Alexander D. M'Bride and Geo. M'Bride. The defendants had obtained a judgment against John and James M'Laughlin, upon which they had procured an execution to issue and levied upon the separate property of John and sold it under circumstances of peculiar injustice and oppression. The proof was that the oppression was meditated against James, and not against John, who was said to have joined in the judgment by mistake: and it was set aside as to him. That part of the case which gave rise to the questions of law determined was the charge of the court.

(Grier, President) " But it is said there is no evidence of any malice or ill will against John, the plaintiff, that if defendants did treat James harshly and unfairly it should not go to enhance the damages against John. It is true there is no evidence of any particular malice against *John*, but I cannot see how the matter can be separated, or why John should not recover vindictive damages as well as James, if the jury believe the defendants acted deceitfully and oppressively in the taking and carrying on this (as to John) illegal process. If a man aims at my *brother* and shoots *me*, it would be with an ill grace he would ask the jury to treat the case as an *accident*, because he had no malice against me. If, therefore, the jury believe that the defendants acted in a deceitful, harsh, cruel or oppressive manner, they may give not only compensatory, but exemplary and vindictive damages.

*Fetterman* and *Shaler*, for plaintiff in error, cited 3 *Amer. Jur.* 287; Bussy *v.* Donaldson, 4 *Dall.* 206.

*Mahon* and *Metcalf*, contra, cited 5 *Day* 144; 3 *Stark.* 1450; Tilotson *v.* Cheetham, 3 *Johns.* 64; Wurt *v.* Jenkins, 14 *Johns.* 352.

[M'Bride v. M'Laughlin.]

The opinion of the Court was delivered by

GIBSON, C. J.—In trespass, the *quo animo* is certaiuly not material to the question of liability; nor is it so even to the *quantum* of the damages in order to bring it below the actual injury. The common law rejects the compromising principle of the civil law, which divides the loss betwixt parties equally blameless; and acts on a sterner but more exact rule of justice, by casting the whole on him who occasioned it, and requiring him to bear the consequences of his own acts as his own mischances. But though mitigant circumstances may not reduce the compensation below the actual loss, may not circumstances of aggravation be suffered to enhance it? Whatever be the speculative notions of fanciful writers, the authorities teach that damages may be given, in peculiar cases, not only to compensate, but to punish. There are offences against morals to which the law has annexed no penalty as public wrongs, and which would pass without reprehension did not the providence of the courts permit the private remedy to become an instrument of public correction. Such, in a signal degree, is the function of an action for debauching a daughter, in which the consequential loss of service— the legal and technical injury—is compensated a thousand fold, though its value is as capable of accurate estimation as that of any other commodity. It is idle to say that loss of service is not the real gravamen. The law tolerates no anomaly so monstrous as a count for one cause of action and a recovery for another. Were damages given, not to castigate, but to remunerate for loss of prospects, comfort, and honour—if haply there could be an equivalent for these—the count and the evidence would conform to the grievance; instead of which it is indispensable to assert the existence of servitude and to prove it. As regards the plaintiff, then, the ostensible wrong is the real one; but as regards the public it may be a very different thing. On no other principle could more be given than is commensurate with what the law admits to be an injury. On what other principle are the circumstances of the defendant put before the jury, for purposes of aggravation or mitigation, in perhaps all cases of personal tort? The ability of the plaintiff legitimately enters into the estimate of compensatory damages, because a dollar is worth less to a rich man than to a poor one; but the extent of an injury has no imaginable relation to the means of him who is to repair it. In actions whose end is clearly compensation and no more —trover or debt, for example—the law inquires not into the ability of him who has converted my chattels or withheld my money, but gives me the same damages or interest whether he be rich or whether he be poor, or whether the wrong were more or less excusable in a moral view; and the converse shows that where the defendant's circumstances are brought into the account, something else than individual reparation is contemplated. Nor can it be said the wrongdoer is to suffer in order to appease the resentment of the injured; and that even vindicatory damages are, in truth, compensatory. The

[M'Bride v. M'Laughlin.]

purposes of the law are more elevated than the gratification of revenge. Mental or bodily pain is doubtless a legitimate subject of amends; produced, however, not by the infliction of suffering, but by a pecuniary equivalent. The enhancement of damages by the ability of the defendant, not being designed for the benefit of the plaintiff, must consequently be for something beyond compensation. That corrective damages may be given for the sake of example, is as old as the law itself. For this I add to the authorities cited, but the case of Benson *v.* Frederick, 3 *Burr.* 1845, where, in trespass against an officer for ordering an innocent soldier to be flogged, a new trial was refused though the damages were conceded to be vastly beyond the proportion of what the man had suffered, because the injury was inflicted *malo animo*, and out of mere spite against, not the soldier, be it remarked, but a brother officer who had given him a furlough. Cases for the application of the principle are found, also, in violations of civil liberty and common right. In Huckle *v.* Moody, 2 *Wilson* 205, a new trial was refused where 300 pounds had been given to a journeyman printer arrested under one of the celebrated general warrants, but treated well during a detention of six hours, though it was taken for granted that the mere personal injury did not exceed 20 pounds. That was undoubtedly a sharp verdict, for the defendant was unapprised of the illegality of his warrant. In Kuhn *v.* North, 10 *Serg. & Rawle* 399, our own court behaved more discreetly by protecting a mistaken and innocent officer from the fury of the jury. But in Sommer *v.* Wilt, 4 *Serg.-& Rawle* 19, we declined to interfere for one who had committed a wilful and malicious abuse of process, though the limit of mere compensation had undoubtedly been transcended. What, then, is there to take the case at bar out of the general principle? The meditated oppression was not intended for the plaintiff, it is true; but neither was it so intended in Benson *v.* Frederick, when the object of a defendant's spite was a brother officer, or in Wood *v.* Jenkins, 14 *Johns.* 352, where it was the plaintiff's horse. What matters it to the public that the actual victim was not particularly aimed at? The defendant was guilty of wilful oppression, and he is properly punished for it.

Judgment affirmed.