Hendrickson v. Kingsbury.

<hr>

HENDRICKSON v. KINGSBURY.

21  379<br>102  218

1. Measure of damages: ASSAULT AND BATTERY: PUNITIVE DAMAGES. In an action for damages sustained by an assault and battery the court instructed the jury as follows: "Damages are of three kinds, nominal,

Hendrickson v. Kingsbury.

compensatory and exemplary. First, nominal damages are proper when any right has been invaded, and no evidence is given of any particular amount of loss, and some very small sum, such as a cent, merely sufficient to carry costs. Second, compensatory damages are given when no elements of oppression or malice enter into the commission of the offense, and are designed merely to furnish actual compensation for the injury sustained. Third, exemplary damages are given whenever elements of oppression or fraud or malice enter into the commission of the offense; and in such cases the jury are not limited to actual compensation, nor are they required to scrutinize very closely the amount of the verdict, but blending together the rights of the injured party and the interests of community, they may give such a verdict as will compensate for the injury and at the same time inflict some punishment upon the defendant for his wrongful act, protect society, *and manifest the detestation in which the act is held by them.*" *Held,* That in so far as the instruction directed the jury that they could increase the amount of the verdict to "*manifest the detestation in which the act is held by them*" it was erroneous; and that for that reason a judgment for the plaintiff should be reversed.

2. —— PUNITIVE DAMAGES AND PENALTIES. The damages allowed in a civil case by way of punishment have no necessary relation to the penalty incurred for the wrong done to the public; but are called punitive damages by way of distinction from pecuniary damages, and to characterize them as a punishment for the wrong done to the individual.

3. New trial: AFFIDAVITS OF JURORS. The court below erred in striking from the files affidavits of jurors filed in support of a motion to set aside a verdict and grant a new trial, showing that the verdict was obtained by each juror marking down the sum desired by him, and adding all together and dividing the amount by twelve, making the quotient the verdict, pursuant to previous agreement.

*Appeal from Fremont District Court.*

MONDAY, DECEMBER 10.

ACTION for an assault and battery, trial to a jury. Verdict of three thousand six hundred and twenty-five dollars for plaintiff. Motion for a new trial overruled and judgment entered on the verdict. The defendant appeals.

*Robert Percival* for the appellant.

*D. N. Solomon* for the appellee.

COLE, J.—I. The first question made in this case arises from the giving and refusing instruction to the jury upon the question of damages. The evidence in the case is not contained in the transcript; but the petition alleges that the defendant willfully, maliciously, wantonly and oppressively assaulted and beat the plaintiff at her house, the house of her father in Fremont county, Iowa, just as she was starting to Sabbath school with her sister and a gentleman attendant; that the defendant seized her with violence and struck her severe blows with his fist, tore her clothing from her so as to expose her naked person, to those passing on the highway, and destroyed her dress, shawl, veil and hat, and accompanied these acts with coarse, disgusting and insulting language toward her; that he was actuated by a purpose of the basest character of long standing.

*1. MEASURE OF DAMAGES: as sault and battery : punitive damages.*

The following are the instructions complained of, the first of which was given and the last refused. No question is made as to their relevancy under the testimony in the case.

"Damages are of three kinds, nominal, compensatory and exemplary.

"1. Nominal damages are proper where any right has been invaded, and no evidence is given of any particular amount of loss, and is some very small sum, such as a cent—merely sufficient to carry costs.

"2. Compensatory damages are given when no elements of oppression or malice enter into the commission of the offense, and are designed merely to furnish actual compensation for the injury sustained.

"3. Exemplary damages are given whenever elements of oppression or fraud or malice enter into the commission of the offense: and in such cases the jury are not limited to actual compensation, nor are they required to scrutinize very closely the amount of their verdict, but blending together the rights of the injured party and the interests of community, they may give such a verdict as will compensate for the injury, and at the same time inflict some punishment upon the defendant for his wrongful act, protect society and manifest the detestation in which the act is held by them. In this case you may give either nominal, compensatory or examplary damages, as you may believe yourselves justified by the evidence." (Given and excepted to by defendant.)

"In a case of assault and battery the law provides for the punishment of the offender by a criminal prosecution against him; and in a civil suit against him by the party injured, the jury are not to give a verdict against the defendant for the purpose of punishing him." (Refused and excepted to by defendant.)

It will be observed, that in the first instruction as given by the court to the jury, they are told, *first*, that they are not limited to *actual compensation;* *secondly*, that they are not required to *scrutinize very closely the amount* of their verdict; and, *thirdly*, that they may *blend together* the rights of the injured party, and the interests of community and thereby *compensate the plaintiff* for her injury, to which compensation they may add another amount as *punishment upon the defendant* for his wrongful act, then add still another amount *to protect society*, and yet further and finally they may add another amount *to manifest the detestation in which the act is held by them.*

We shall have occasion, in a subsequent part of this opinion, to notice the authorities (case and elemental) going to support the various above italicized portions of

the instruction, except the last line. As to the right of the jury to increase the amount of their verdict so as " to manifest the detestation in which the act is held by them," we think that such language, or its equivalent, cannot be found in an authoritative report of any adjudicated case in England or this country. Mr. Sedgwick, in his article, in reply to Professor Greenleaf's review of his text, both of which may be found in the appendix to Sedgwick on the Measure of Damages (2d and 3d ed.), quotes that language, and cites Lives of the Lord Chancellors, vol. 5, p. 249. We have the second American from the third London edition of that most excellent work, and on pages 213 and 214 the learned author and justly distinguished jurist, Lord CAMPBELL, after stating the circumstances of the discharge, under *habeas corpus*, of Mr. Wilkes from arrest for libel under a " general warrant" issued by Lord HALIFAX, says: The immense popularity which Lord Chief Justice PRATT (afterward Lord CAMDEN) now acquired, I am afraid, *led him into some intemperance of language*, although his decisions might be sound. Many actions were brought in his court and tried before him, for arrests under general warrants; and, the juries giving enormous damages, applications were made to set aside the verdicts, and to grant new trials. It might be right to refuse to interfere, but not in terms such as these: * * * " The defendants claim a right, under a general warrant and bad precedents, to force houses, break open escritoires, seize papers where no inventory is made of the things taken, and no persons' names specified in the warrant, so that messengers are to be vested with a discretionary power to search wherever their suspicions or their malice may lead them. As to the damages, I continue of opinion that the jury are not limited by the injury received. Damages are designed, not only as a satisfaction to the injured person, but like-

wise *as a punishment to the guilty, and as a proof of the detestation in which the wrongful act is held by the jury.*" Lord CAMPBELL himself italicizes the last lines in his quotation, and thereby points to that as the "intemperate language," into which Lord CAMDEN had been led by his "immense popularity," acquired by the discharge of Mr. Wilkes, a member of parliament, from his arrest under a general warrant, for publishing a seditious libel. The discharge was based upon his privilege, as member of parliament, to be free from arrest in all cases *except treason, felony and actual breach of the peace.* Upon the re-assembling of .parliament, after Mr. Wilkes' discharge, both Houses declared (as if in condemnation of · Lord CAMDEN's decision) "that privilege of parliament does not extend to the case of writing or publishing seditious libels." It was after this resolution of parliament, and in Mr. Wilkes' own action for that particular arrest, that Lord Chief Justice PRATT is said by Lord CAMPBELL to have used the language quoted; but in a note to page 14 of the Lives of the Lord Chancellors, the case of *Beardmore* v. *Carrington* (2 Wils., 244) is cited. Now, if Lord CAMPBELL, who writes of Lord CAMDEN as "one of the brightest ornaments of my profession, and *of my party*," can so unequivocally condemn this particular language as intemperate and unsound; and when the circumstances under which it was uttered are so clearly indicative of a controversy between the king and parliament on the one hand, and the court and people on the other, as would naturally (if not properly) stimulate to the use of strong and partisan language, is it reasonable to hold upon this authority alone, that such language is the law of the land and ought to be given as such, by way of instructions to the jury ? It should also be borne in mind, that even Lord CAMDEN himself did not give this language in instructions to the jury, but only used

it in argument to sustain his judgment and refusal to set aside the verdict on the ground of excessive damages.

Without passing, just here, upon the correctness of the other portions of the instruction, we think that after telling the jury that they may compensate the plaintiff, punish the defendant, and protect society, and not scrutinize these amounts very closely, that they may also add such further sum as will manifest the detestation in which the act is held by them, is, to speak mythologically, " piling Pelion and Ossa on Olympus," and is without good foundation, as we think, in principle or precedent.

II. The cause must be reversed for the error as shown in the foregoing discussion. But the counsel for appel2.——— punitive damages and penalties. lant also insists that there was further error in the instruction as given by the court, and especially so far as it directed the jury to give such a verdict as would "inflict some punishment upon the defendant for his wrongful act."

This question has been discussed by counsel only to a limited extent; and that, too, in connection with the instruction as refused, in which the court was asked to instruct the jury that since assault and battery was punishable by criminal prosecution, they could not " give a verdict against defendant in this case for the purpose of punishing him." We propose to examine the questions separately, and, first, as to the right of the jury to give damages by way of punishment.

Without now stopping to review or discuss at any length the numerous cases in which this question, has been discussed or decided by the courts of England and this country, we may state that we have carefully examined over one hundred different cases, and find that a majority of them *decide* (the necessity or propriety of the decision being involved in the determination of the case) that vindictive or punitory damages may be given

in cases where the element of fraud or oppression is shown; and the balance, with the exception of the cases hereinafter specified, and possibly three or four others, contain *dicta* recognizing the doctrine of vindictive or punitory damages; but the question was either not necessarily involved in the case or was not controverted by counsel.

He would be a bold jurist who, in view of these authorities, should hold that the doctrine of exemplary, vindictive, or punitive damages had no foundation in law. Since the time of the controversy between Professor Greenleaf and Mr. Sedgwick (1847) on this subject, a large majority of the appellate courts in this country have followed the doctrine advocated by Mr. Sedgwick in that controversy; and our own Supreme Court has expressly denied, on the authorities, the correctness of Professor Greenleaf's views (*Frink & Co.* v. *Coe*, 4 G. Greene, 555); and in the same case expressed the opinion that, under certain circumstances, exemplary damages should be entertained. In a case against a physician for malpractice, it was held by our court that the plaintiff was not restricted to actual damages. *Cochran* v. *Miller*, 13 Iowa, 128. And in other cases our court has indirectly recognized the same doctrine. *Thomas* v. *Isett*, 1 G. Greene, 470; *Denslow* v. *Vanhorn*, 16 Iowa, 476; *Kinyon* v. *Palmer*, 18 Iowa, 377. See also Rev. 1860, §§ 3112, 3113, 3183.

It seems that the terms *exemplary, vindictive, punitive, imaginary, presumptive, speculative* and *smart money*, are used in law as synonymous; and the first three were expressly held in *Chiles* v. *Drake* (2 Metc. [Ky.], 146) to be synonymous terms. While these words certainly have a critical or technical difference of signification, as defined by lexicographers, yet they have been too long used as synonymous by legal writers to now justify the making

of any distinction in their meaning in construing the decisions or opinions of judges, or other law writings in which they are used.

The controversy on this subject between Professor Greenleaf and Mr. Sedgwick may, perhaps, after all the attention and discussion it has excited, be found to be a controversy as to the terminology of the law, rather than as to the extent of the right of recovery or the real measure of damages. Professor Greenleaf holds that while the plaintiff can only recover compensation, he is not confined to the proof of actual pecuniary loss, but that the jury may take into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property, but in his person, his peace of mind, his quiet and sense of security in the enjoyment of his rights; in short, his happiness. But it must affect *his happiness*, not his neighbor's; and therefore to this question alone the jury should be restricted. Sedg. on Meas. of Dam., 609. While Mr. Sedgwick holds that whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interests of society and the aggrieved individual, and gives damages, not only to recompense the sufferer, but to punish the offender. Sedg. on Meas. of Dam., 623.

The difference arises, not in the statement of the respective propositions, but in the restatement or construction which each puts upon the rule stated; " in short " says Professor Greenleaf, " *his* happiness," while Mr. Sedgwick says " in other words blends together the interest of society and the aggrieved individual," etc. But some of the courts, which follow the rule as stated

by Mr. Sedgwick, place a construction upon it, not at all in antagonism to the rule as stated by Mr. Greenleaf. In *Chiles* v. *Drake* (2 Metc. [Ky.], 146), the court say "every recovery for a personal injury, with or without vindictive damages, operates in some degree as a punishment, but it is a punishment which results from the redress of a private wrong, and does not, therefore, violate either the meaning or spirit of the constitution" prohibiting more than one punishment for the same offense. * * * * * "The damages are allowed as compensation for the loss sustained, but the jury are permitted to give exemplary damages on account of the nature of the injury. It is, therefore, the increase of the damages resulting from the character of the defendant's conduct that is denominated punitive or vindictive."

Under the rule, as stated by Mr. Greenleaf, this increase of damages resulting from the character of the defendant's conduct, showing fraud, malice or oppression, is given to the plaintiff as compensation for the invasions of his "peace of mind, his quiet and sense of security in the enjoyment of his rights;" while under the rule, as stated by Mr. Sedgwick, this increase is given as "punitory, vindictive or exemplary damages." In either case, and under either rule, the amount given by the jury is "imaginary," "presumptive" or "speculative," with them; that is, the jury have not, and in the nature of things cannot have, in either case, any pecuniary standard by which to measure the amount of compensation or damages, to which the plaintiff is entitled.

It is, perhaps, true that the broad and general language of the rule, as stated by Mr. Sedgwick, tends more to convey to a jury the idea of their unlimited and unrestrained power, jurisdiction or control over the amount of their verdict, than the rule, as stated by Mr. Greenleaf; and that, under that rule, jurors would more frequently

Hendrickson v. Kingsbury.

return verdicts based more or less upon their passions and prejudices, than under the other rule. For instance, the instruction, as given in this case, omitting the objectionable clause heretofore considered, would tend very strongly to convey to the jury the idea of complete control over the amount of their verdict, unrestrained by any legal rule whatever. But, suppose they had been instructed that, in estimating the amount of plaintiff's damages, they would ascertain and give: First, the actual pecuniary loss directly sustained, as the value of the clothing destroyed. Second, the consequential pecuniary loss, as the value of the time lost by plaintiff, the expenses (if any) incurred for medicine, physicians' bills, compensation to the attendant and board while sick, and the like. Third, the physical suffering consequent upon the injury, including any temporary, protracted or permanent deformity, disability or disfiguring, as by scars or the like. Fourth, the mental anguish, loss of honor and sense of shame, caused by the act of the defendant, as by the exposure of her naked person to the public, the sense of wrong inflicted, insult effected, the degradation felt, and the like. Fifth, the injury to the business, reputation, social standing, and the like. Is it not unreasonable to suppose that such an instruction would more certainly exclude passion and prejudice, and that a jury would feel themselves more constrained to limit their verdict to the compensation to plaintiff for the injuries inflicted by the defendant, and, at the same time, would render a verdict which would amply compensate for the injury in every phase and manner wherein it could operate. And, indeed, it seems to us that, under such an instruction, the verdict would be far more likely to approximate to justice, and to exclude passion and prejudice, than under the loose and general instruction as given by the court in this case, and justified by the rule laid down by Mr. Sedgwick, and sustained by

the general current of the authorities. And yet it is doubtless true that such an instruction might mislead and confuse a jury; and they would not, in any event, have any pecuniary standard by which to measure the damages under the third, fourth and fifth subdivisions of the instruction as specified.

It must be remembered that the doctrine of giving damages as a punishment for the malicious or oppressive act of the defendant, if they are construed *as punishment*, must be limited to cases where the act done is not punishable by the penal or criminal laws of the State. For it is a principle of the common law, and one which is embodied in many of the State Constitutions that no person shall be twice punished for the same cause—*nemo bis vexari pro eadem causa*.

And if the rule of giving damages as a punishment cannot be applied in cases where the act is punishable by the criminal laws of the State, then it cannot be a general rule and would operate unequally.

Take this case for illustration. If the petition contains a true statement of the acts of the defendant, the verdict is certainly little enough. But the statute limits the penalty for the crime those acts constitute to one hundred dollars and thirty days imprisonment. Now, if no damages by way of punishment can be given when the act is punishable by the criminal laws of the State, the penalty in this case would amount to a positive benefit to the criminal. The term "punitive damages," as contained in Mr. Sedgwick's rule, is construed in some States as a punishment for the act, and the rule is, therefore, held in Massachusetts and Indiana, and perhaps other States, not to apply in cases where the act is punishable by the criminal laws of the State. *Austin* v. *Wilson*, 4 Cush., 273; *Tabor* v. *Hutson*, 5 Ind., 322; *Butler* v. *Mercer*, 14 Id., 479; *Nossaman* v. *Rickerts*, 18 Id., 350. While

in Kentucky the term "punitive damages" is held and construed not to mean that damages were given *as a punishment* but to *remunerate for the loss sustained;* and, therefore, in that State the rule would apply to all cases.

In New York it has been held that punitive damages are given *as a punishment*, and may be given where the act is criminally punishable also; and that in such cases the remedy for the defendant is to procure a suspension of the judgment in the criminal case until the civil case is tried, and then avail himself of the verdict in the civil action by way of mitigation of the penalty in the criminal case. *Cook* v. *Ellis*, 6 Hill, 466; see also *Cole* v. *Tucker*, 6 Texas, 266; *Wilson* v. *Middleton*, 2 Cal., 54; *Corwin* v. *Walton*, 18 Mo., 71.

But the clear weight of authority is with the rule as laid down in *Chiles* v. *Drake, supra*; in substance, that the damages allowed in a civil case by way of punishment, have no necessary relation to the *penalty* incurred for the *wrong done to the public;* but are called punitive damages by way of distinction from pecuniary damages, and to characterize them as a punishment for the *wrong done to the individual.* In this view, the awarding of punitive damages can in no just sense be said to be in conflict with the constitutional or common law inhibition against inflicting two punishments for the same offense.

The instruction as given, aside from the portion discussed in the first part of this opinion, being fully sustained by the authorities, was not erroneous; nor was it error to refuse to give the second instruction (copied above) as asked by the defendant.

III. After the verdict was rendered in this case, the defendant procured and filed the affidavits of two of the jurors who tried the cause, that the verdict was obtained by each juror marking down the sum desired by him, and adding all together and

3. NEW TRIAL: affidavits of jurors.

dividing the amount by twelve; that the quotient, pursuant to previous agreement, was taken and returned as the verdict. The plaintiff moved to strike these affidavits from the files, which motion was sustained. 'The defendant excepted, and now assigns the same as error. It was error to sustain this motion, as we have before determined upon a full review of the subject, in the case of *Wright* v. *Telegraph Company* (20 Iowa, 195).

Reversed.