[No. 3,573.]

## RUSSELL *v.* DENNISON ET AL.

RECORD TO SHOW EXCEPTIONS.—Where the record fails to show that exceptions were taken to the rulings of the Court during the trial, and to the charge given to the jury, objections to the same will not be considered.

NEW TRIAL ON ACCOUNT OF NEWLY DISCOVERED EVIDENCE. — A new trial will not be granted on account of newly discovered evidence if the same was cumulative, or if with proper diligence it might have been procured on the former trial.

SUFFICIENCY OF EVIDENCE—To justify a verdict of damages for malicious prosecution, considered.

MEASURE OF DAMAGES.—Where a trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship and oppression, the measure and amount

of damages are matters for the jury alone. Courts will not disturb the verdict on the ground that the damages are excessive, unless the amount of damages is so disproportionate to the injury proved as to make it clear that the jury acted under the influence of passion or prejudice.

DAMAGES FOR MALICIOUS PROSECUTION.—In the case stated in the opinion: *held,* that seven thousand dollars damages, for malicious prosecution, are not excessive.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The facts are stated in the opinion.

*Parker & Roche, D. S. Terry,* and *L. T. Carr,* for Appellants.

*Barna McKinne* and *J. H. Budd,* for Respondent.

By the COURT:

This is an action to recover damages for a malicious prosecution. The plaintiff recovered judgment for seven thousand dollars, from which and from an order denying their motion for a new trial the defendants have appealed.

1. We cannot consider the points made upon the instructions to the jury, for the reason that the statement fails to show that any exceptions were taken to them. The minutes of the Clerk, if they were brought into the record, would not aid the appellants in this respect.

For the same reason we cannot consider the propriety of the questions which were addressed to the witness Melinda Russell and the plaintiff, and were objected to by the defendants. After the objections were overruled, it does not appear that any exceptions were reserved.

The same may be said of the point that the proceedings of the Court were irregular, and prevented the defendants from having a fair trial, because when the jury came in for further instructions the Court read to them only its own charge, and refused the request of defendants' counsel to

read all the instructions which had been given. The record shows that the Court read to the jury all the instructions for which they had asked, and besides that no objection was taken to the course pursued by the Court in this respect, and no exceptions reserved.

2. There was no error in denying the motion for a new trial on the ground of newly discovered evidence. The affidavits show that the evidence relied upon was cumulative, and that with ordinary diligence it might have been produced at the former trial.

3. It is insisted that the evidence was insufficient to justify the verdict, and that a new trial should have been granted for that reason. In the complaint it is alleged that the defendant, Dennison, caused to be made, and the defendant, Leffler, made maliciously and without probable cause, a complaint under oath before a Justice of the Peace, charging the plaintiff and one James Russell, Jr., with having stolen two mules of the value of one hundred dollars each, the property of the defendant, Dennison, and that upon this complaint, they maliciously and without probable cause procured the said Justice to issue a warrant for the arrest of the plaintiff upon said charge; that upon the said warrant the plaintiff was arrested in the County of Butte and taken thence to the County of San Joaquin, when upon an examination before the Justice, it appearing that there was no sufficient cause to believe him guilty of the charge, he was fully acquitted and discharged, and all further prosecution against him was abandoned by the defendants. The answer denied that the prosecution was commenced or continued maliciously, or without probable cause, and among other things alleged that before making the complaint the defendant, Dennison, "fully and fairly stated to his counsel, Terry & Carr, all the facts and circumstances of the case, and all the facts and circumstances tending to show who had stolen and driven away said mules and other property of the

defendant as aforesaid, and was informed and advised by his said counsel that the plaintiff and said James Russell, Jr., were guilty of said theft, which the defendants verily believe and allege to be true."

Undoubtedly it devolved upon the plaintiff to establish the fact that the prosecution was malicious and without probable cause, and to this end considerable testimony was introduced. Among other things the testimony tended to prove that James Russell, Jr., had occupied for some time a farm belonging to Dennison, in San Joaquin County, as tenant; that with him lived his father, the plaintiff, and his mother; that they occupied a small house and owned all the furniture in it; that the son had a pair of horses and a wagon, and the father some horses or mules, and a wagon; that in January or February the son bargained with Dennison for the mules, which were charged to have been stolen, and it was agreed he might have them for three hundred dollars, to be paid for during the coming season in work, bestowed in throwing up a mound of some six or seven thousand yards of earth at ten cents a yard; that Dennison said the objection he had to selling the mules was that they would be all Summer paying for them, and he did not want to lose the use of them; but when the son said he would let him have his pair of horses to use till he had paid for them, Dennison said: "All right, give me the horses; so I can get the use of the horses, it's all right," and that then Dennison delivered the mules to him; that Dennison afterwards said he had sold the mules, and often spoke of them as "Jimmy's mules;" that Dennison had upon the farm more than a hundred head of horses and mules, some farming implements and other property, of which the son had charge; that about four or five o'clock on the morning of the fourth of March, the plaintiff, his wife and son, without notice to any one, left the farm, taking with them all their property, including the two mules, but nothing else belonging to Dennison, and went thence to a point

near Oroville, in Butte County; that when he left the son had performed work upon the mound to the amount of some twenty-five dollars, and that the balance of the three hundred dollars was unpaid; that Dennison upon being notified by telegraph in San Francisco that the Russells had left, immediately went to the farm, and after carefully examining to see what was gone went to his attorney and told him that "the Russells had gone off and stolen every d—d thing on the ranch but the well;" that everything movable upon the place was gone; that he stated to his attorney the contract about the mules, and, thereupon, was advised to take out and did take out the warrant under which the plaintiff was arrested.

This is but a meager outline of the testimony, and upon many of the points, including the question of whether the sale of the mules was consummated so that the title thereto had vested in young Russell, the testimony was conflicting. Under these circumstances we cannot say that the verdict was not justified by the evidence. Besides, Dennison certainly knew of his contract with the son, and it is not easy to see why, even if he believed that the title to the mules had not passed, and that they had been stolen, he should charge the plaintiff with stealing them. The jury might well say, we think, as they did, that as to him the charge was maliciously made, and without probable cause.

4. It is also claimed that the damages were excessive. The testimony tends to show that the plaintiff, after being arrested, was taken to Oroville and placed in jail till the next day; that he was then taken in irons to Sacramento, where he was kept in jail over night, and then to Stockton, where he was imprisoned for four days; that he became quite sick, and so continued for more than a week, being obliged to employ the services of a physician and nurse. Now, if it be true that this prosecution was commenced against him maliciously, and without probable cause, the

case was one in which the jury were authorized to award exemplary damages. The rule is well settled that where a trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship and oppression, the measure and amount of damages are matters for the jury alone. In such cases Courts will not disturb the verdict, on the ground that the damages are excessive, unless the amount of damages is so disproportionate to the injury proved as to make it clear that the jury, in rendering the verdict, must have acted under the influence of passion or prejudice. If, in view of the evidence, we were permitted to assess the damages ourselves, it may be we should assess them at a somewhat less figure than that named by the jury; but we cannot say that they are so clearly disproportionate to the injury received as to make it evident they were not the result of the fair, unbiassed judgment of the jury.

The judgment and order must be affirmed, and it is so ordered.