BROWN *v.* EVANS.

(*Circuit Court, D. Nevada.* February 5, 1883.)

1. EXEMPLARY DAMAGES.
    In vindictive actions, such as assault and battery, slander, libel, seduction, etc., where fraud, malice, cruelty, oppression, brutality, or wantonness is shown, on the part of the defendant, exemplary damages may be recovered.
2. WEALTH OF DEFENDANT.
    In the above class of actions evidence may be given of defendant's wealth.
3. CRIMINAL LIABILITY OF DEFENDANT.
    Exemplary damages may be recovered in a civil action, although the act complained of may be a crime or misdemeanor, and subject the defendant to criminal prosecution therefor.
4. GOOD CHARACTER.
    In actions for damages for assault and battery, evidence of defendant's former good character is not admissible.
5. NEW TRIAL—CUMULATIVE EVIDENCE.
    A new trial will not be granted on the ground of newly-discovered evidence, when such evidence is merely cumulative, or is upon unimportant matters in the case, or where, in the opinion of the court, such evidence, if produced, would not affect the action or verdict of a jury.
6. EXCESSIVE DAMAGES.
    A new trial will not be granted on the ground of excessive damages, in an action of personal tort, unless it appear that the jury were influenced by passion, prejudice, corruption, or willful disregard of law, in assessing such damages.

This is an action brought by plaintiff to recover from defendant the sum of $20,000 damages alleged to have been sustained by plaintiff by reason of an assault and battery committed by defendant upon plaintiff, on or about the thirtieth day of March, A. D. 1881, at the town of Reno, county of Washoe, state of Nevada. The cause was duly tried in this court at the November term thereof, 1882; Hon. Lorenzo SAWYER, circuit judge, and Hon. G. M. SABIN, district judge, presiding. The jury returned a verdict for plaintiff in the sum of $8,150.87, and judgment was thereupon duly entered for said sum and costs in favor of plaintiff. Thereafter counsel for defendant duly moved the court to set aside said verdict and judgment, and to grant a new trial herein. The motion was argued orally by counsel for the respective parties before SABIN, J., presiding, and was submitted on briefs filed. The grounds of defendant's motion for a new trial are stated in the

¹ From 8th Sawyer.

opinion of the court, pronounced February 5, 1883, when said motion was denied.

*R. M. Clarke,* for the motion.

*R. H. Lindsey* and *W. E. F. Deal, contra.*

SABIN, J.    This action was brought by plaintiff in the proper state court (and afterwards removed to this court) to recover from defendant the sum of $20,000 damages alleged to have been sustained by plaintiff by reason of a most brutal, unprovoked, and wanton assult and battery committed by defendant upon plaintiff, March 30, 1881, at the town of Reno, in the county of Washoe, state of Nevada, accompanied by acts of great atrocity, and nearly culminating in the death of plaintiff.

The defendant pleaded a qualified denial and justification of the assault, but it is very difficult, in fact impossible, to reconcile the verified answer of the defendant with his testimony given in his own behalf upon the trial of the case.    The jury found for the plaintiff in the sum of $8,150.87, and judgment was duly entered upon the verdict for said sum and costs.    Defendant now moves the court to set aside that verdict and judgment, and that a new trial of the action be granted.    I have carefully examined the authorities attainable, cited by counsel on either side, and many not cited in their briefs or in this opinion.

The first question that meets us in the discussion of this motion is this:  Was and is this a case wherein exemplary, punitive, or vindictive damages can be allowed or assessed by the jury against the defendant?    The terms "exemplary, punitive, or vindictive damages" are synonymous in their legal signification.    This question was held in the affirmative by the court upon the trial of the case. If the court was in error on this point, a new trial might be granted, since, in that case, the action was tried upon a wrong theory of the law applicable thereto, and thus improper evidence may have been submitted to the jury.

It may be laid down as a general proposition of law, elementary in character, that in all this class of cases of personal torts, "vindictive actions," such as assault and battery, slander, libel, seduction, *crim. con.,* malicious arrests and prosecutions, seizure of goods, etc., where the elements of fraud, malice, gross negligence, cruelty, oppression, brutality, or wantonness intervene, exemplary or punitive damages may be recovered from the defendant.

The authorities supporting this position are too numerous to cite or review here.    An examination of a few of the authorities will establish the fact that this has been the settled law of this country for more than 100 years, and that such is now the law in nearly all the states of the Union.    Nebraska, I believe, is a solitary exception to the rule.    The supreme court of that state holds that under no circumstances can exemplary damages be recovered.    The English

cases run much further back in point of time, and the American cases are generally in harmony with them.

I am able to refer to only a few of the cases examined on this point, but it is believed that the following cases fully establish the doctrine of exemplary damages in proper cases, and are fair exponents of the great body of American law on this subject: See 1 Sedg. Dam. 53, 174; 2 Sedg. Dam. 323, and note; also pp. 335–344; 13 How. 371; 91 U. S. 493; 3 McLean, C. C. 23; 21 Iowa, 379; 4 Duer, 247; 5 Watts, 375; 13 Iowa, 92; 27 Amer. Dec. 685, and notes; 1 Head, 336; 43 Me. 163; 64 N. Y. 440; 24 Wis. 292; 81 Ill. 70; 2 Metc. (Ky.) 146; 6 Tex. 266; 27 Miss. 68; 39 N. H. 576; 43 Miss. 598; 51 Miss. 103; 44 Wis. 282; 3 Scam. 372; 4 Wis. 67; 99 Mass. 552; 114 Mass. 518; 2 Cal. 54; 40 Cal. 578; 45 Cal. 337; 10 Ohio St. 292; 27 Ohio St. 277; 48 Mo. 152; Field, Dam. 70; 2 Greenl. Ev. § 267.

In 3 Scam. 373, the court says: "In vindictive actions * * * the jury are always permitted to give damages, for the double purpose of setting an example and of punishing the wrong-doer." And such is the doctrine of the cases above cited, and of many more examined and not cited.

There was no error in the ruling of the court that this was a case in which exemplary damages might be recovered and should be allowed.

I now proceed to consider the grounds urged for a new trial *seriatim*, as stated by defendant's counsel in his brief.

1. That the court erred in admitting evidence of defendant's wealth.

In this ruling there was no error, this being a vindictive action, in which exemplary damages might be recovered. See 49 N. H. 358–370; Field, Dam. 78, 127, 128, 479, 554, and note; 2 Greenl. Ev. § 269; 27 Miss. 68, 85, 86; 52 Me. 502; 15 Wis. 240; 5 Watts, 375; 44 Wis. 282, 291–294; 4 Duer, 247, 262; 13 Iowa, 92; 4 Wis. 67; 3 Scam. 372; 6 Conn. 24, 27; 48 Mo. 152; 27 Ohio St. 292; 2 Sedg. Dam. 323, and note, 331; 20 Ill. 115.

The reason of the rule is obvious. If exemplary damages may be given by way of punishment for an outrageous act, the jury must know something, at least, of the defendant's ability to respond in damages, since what would be a severe verdict to one with limited means might be but a trifle to one of large means, and the rule utterly fail.

2. "The act complained of, and out of which the damages arose, is a misdemeanor, punishable by fine and imprisonment, and punitive damages cannot be recovered."

This point is not well taken. The fact that a party committing a flagrant wrong upon another subjects himself to criminal prosecution and punishment, is no ground for withholding exemplary damages in a civil action for the same act. See 6 Tex. 266; 21 Iowa, 385, 388–391; 26 Iowa, 185; 44 Wis. 282; 1 Head, 336; 27 Amer. Dec.

685, and note, 687; 4 Duer, 247, 265; 2 Sedg. Dam. 330, and note, 332; 2 Cal. 54; 2 Metc. (Ky.) 152; 18 Mo. 71; 6 Hill, 466; 1 Bish. Crim. Law, §§ 264, 265, and cases cited; Id. §§ 265, 266, and cases cited, 980–988; 14 How. 17–20. The clause of the constitution of this state which is invoked to shield defendant from the penalty of exemplary damages reads as follows: "No person shall be subject to be twice put in jeopardy for the same offense."

The constitution of the United States contains a similar provision. Now, the term "jeopardy," as used in the constitution, has a fixed legal signification, and is always used in connection with criminal proceedings. 1 Abb. Law Dict. 650; 3 Greenl. Ev. § 37; 1 Bish. Crim. Law, § 1012, and as above cited.

In 44 Wis. 287, the court, in discussing this point in a case very similar to the one at bar, by RYAN, C. J., says:

"It would have been no subject of regret to the court if the obligation of the constitution called upon it to abridge the application of the rule. But the court is unable to hold that the constitutional provision has any controlling bearing on the question.

"The constitution only re-enacts what was the general if not literally universal rule at common law. * * * The word 'jeopardy' is therefore used in the constitution in its defined technical sense at the common law; and in this use it is applied only to strictly criminal prosecutions by indictment, information, or otherwise. * * *

"The cases generally hold that the rule in criminal cases, that one shall not twice be put in jeopardy, implies more than the bar of a judgment to an action for the same cause. But no case is known where a conviction upon an indictment has been held a bar to a civil action for damages growing out of the same act; *a fortiori*, none in which a recovery in a civil action has been held a bar to an indictment for the same act. * * * It is manifest that judgment for the one is not a bar to the other."

If this objection has any weight or force, it has it by virtue of this constitutional provision above cited. It has no other support. Tested by the rules of law applicable to this matter of jeopardy, the objection will be found to be without merit or support. A person may, by one act, commit two offenses: one, against the civil law, by the invasion of a private personal right; the other, against the state, in the violation of its criminal law; and he may be prosecuted for each offense, and yet not twice criminally punished for the same offense. In the one case the offending party makes reparation in damages for the civil wrong done to the person injured thereby; in the other, the party is punished by the state for an offense against it in the violation of its law; and a judgment in the one case is no bar to a prosecution in the other. In like manner a person may, by one act, offend against two sovereignties. His act may be an offense against the laws of a state and also against the laws of the United States, and he may be prosecuted and punished either by the state whose laws he has violated, or by the United States, or by both, for his offense against each. 5 How. 432; 14 How. 20; 1 Bish. Crim. Law, §§ 986, 1060.

I am aware that it has been held in a few cases that exemplary damages cannot be recovered in cases of personal torts, where the defendant is liable to a criminal prosecution for the same act. See 5 Ind. 332; 14 Ind. 479; 20 Ind. 192; 4 Cush. 273. In 53 N. H. 342, the subject is discussed, but not decided.

Defendant further insists that the court erred in admitting evidence of plaintiff's health prior to the assault and subsequent thereto, and of defendant's great and superior strength. There was no error in this. The jury was entitled to know the whole transaction. It could not do justice in any case without such knowledge. 2 Sedg. Dam. 330, note 1; Field, Dam. 474. It was necessary that the jury should know the condition of plaintiff's health prior to the assault as well as subsequent thereto.

3. "The court erred in excluding evidence of defendant's good character." There was no error in this ruling of the court. The *character* of defendant was not in issue, directly or indirectly. The issue was, did he or not beat and wound the plaintiff as charged in the complaint? See 1 Greenl. Ev. §§ 54, 55; 2 Greenl. Ev. § 269; Field, Dam. 473; 15 Cent. Law J. 428.

4 and 5. For the sake of brevity I consider the fourth and fifth grounds of defendant's motion together. They are based upon newly-discovered evidence, and surprise at the time of the trial. The surprise seems to have been at the proof of the extent of plaintiff's injuries inflicted by defendant. Now, defendant and all persons are held to intend the natural consequences of their acts. They are at least liable therefor. Says TINDAL, C. J., 7 Bing. 211: "Every person must be taken to be answerable for the necessary consequences of his own wrongful acts." See 2 Greenl. Ev. §§ 89, 224.

As stated by Greenleaf, "the defendant must be presumed to be aware of the necessary consequences of his conduct, and therefore cannot be taken by surprise in the proof of them." This assault was committed more than 18 months prior to the trial, and issue was joined in this action August 3, 1881. The plaintiff and defendant reside in the same village. Defendant knew or could have known plaintiff's condition from the day of the assault to the day of trial. He knew that the nature, extent, and probable duration of any injuries inflicted upon plaintiff would and must be fully investigated, and he should have been prepared to meet this investigation with his witnesses. His witnesses were all within easy attendance upon court. There was in the trial of the case no surprise of which defendant can complain.

The newly-discovered evidence, as disclosed by the affidavits filed, is not of the character to warrant a new trial. See 1 Grah. & W. N. T. 464.

I do not think the evidence of the new witnesses, as disclosed by their affidavits, would in the slightest degree affect the action or verdict of a jury. To a great extent this newly-discovered evidence is

merely cumulative, and upon unimportant matters in the case, and defendant shows no diligence in procuring, or endeavoring to procure, at the trial, the attendance of the witnesses whom he now insists are material and necessary. See 24 Cal. 513; 45 Cal. 337.

Defendant fails to bring himself within the well-established rules of law relative to new trials on the ground of newly-discovered evidence.

6. Counsel for defendant further insists that a new trial should be granted because of the doubt, raised at the trial, as to whether or not plaintiff's upper jaw-bone—the superior maxillary bone—was broken. This is quite immaterial to the real issue in the case, to-wit, did defendant assault plaintiff as charged in the complaint, and was such assault justifiable? All of the medical testimony offered in the case established this fact: that the "alveolar process," in which the teeth are set, and which unites with and blends into the superior maxillary bone, was broken down, carrying with it the five front teeth in place.

Whatever injuries plaintiff received were caused by the acts of defendant. The jury heard all of the evidence on this point, and it was fully competent to determine what bones were or were not broken, and generally what injuries plaintiff received. Whether or not the upper jaw-bone proper was broken, or whether the alveolar process alone was broken down, or whether any bones were broken, was merely an incidental matter in the case, and cannot be permitted to supplant the real issues presented.

7. Upon the argument of this motion it was stated by defendant's counsel that the fifth and sixth grounds of error, as specified in the notice of motion for a new trial, were waived, and no argument was submitted thereon. The third ground of error, however, as specified in the notice of motion, to-wit, "excessive damages, appearing to have been given under the influence of passion or prejudice," was not waived, though counsel for defendant does not notice it in his brief. It therefore remains to be considered, which I will do as briefly as possible.

While it is true that courts reserve and sometimes exercise the power to set aside verdicts, on the grounds herein specified, yet it is a power always to be cautiously used, and which is rarely exercised in cases like the one at bar—cases of personal torts, where no certain rule for assessing damages can be laid down for the guidance of the jury. It is the peculiar and exclusive province of the jury in such cases to assess the damages.

In 12 Johns. 236, SPENCER, J., in passing upon a motion for a new trial based upon the ground of excessive damages, in an action of personal tort, says: "To justify the granting a new trial, the damages must be flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or corruption on the part of the jury." And this is generally the language of courts on this subject.

As stated in 7 Pick. 81, the damages must be so excessive "that all mankind would be struck at first blush with the enormity of the sum." And so, however it may be expressed by a court, the idea and principle always is that a court will not set aside a verdict, in an action of this character, except in extreme and exceptional cases.

Measured by this standard, this case does not come within the rule. I am not prepared, in this case, to say that the damages awarded by the jury are "flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or corruption on the part of the jury;" or that "all mankind" (or even a small portion thereof) "would be struck at the first blush with the enormity of the sum" awarded in this case. See Field, Dam. 555, 683, 702; 1 Grah. & W. N. T. 425, 452; 2 Sedg. Dam. 652 and note, 657 and note, 346 and notes; 7 Pick. 81; 24 Cal. 513; 42 Cal. 215; 45 Cal. 337; 48 Cal. 409.

It would be an almost endless task to review the authorities on this subject—and they are uniform upon this question—that in all cases of personal torts it remains with the jury to fix the just amount of damages which shall be assessed against the defendant. And courts seldom interfere with this duty and prerogative of the jury.

How can I say in this case that the verdict is excessive?

The defendant's own testimony in this case showed that he was the aggressor; that he spoke the first insulting words; that he made the first hostile advances; that he struck the first blow; that plaintiff made no demonstration against him, except to throw up his arm to ward off another coming blow; that he knocked plaintiff down, and then struck him two heavy blows upon the face after he was down, plaintiff offering no resistance; that, seeing him lying senseless on the ground, he told some of plaintiff's employes, who were near, that they "had better go and take care of their boss;" that he informed other parties that "he had licked the d—d old Englishman." The evidence, wholly uncontradicted, further showed that after this assault plaintiff remained insensible from one to two hours; that the nasal bones were broken and crushed "flat upon his face;" that the alveolar process of the upper jaw was broken down, with the five front teeth in place; that his face was horribly bruised and disfigured; that for 10 days, at least, after the assault his life was in imminent peril; that during these 10 days of struggle between life and death plaintiff suffered indescribable agony; that for six weeks he was closely confined to his room, under the care of nurses; that for three months he could eat only liquid and soft food; that the senses of sight, smell, and hearing were injured, and may never again regain their natural condition; that he still suffers pain from the effect of his wounds; that his general health is impaired and may never be fully restored.

I do not know how the jury arrived at the result returned in their verdict. There are no scales in which we can weigh and determine

the price and value of mental agony; no balances by which we may fix the solace for human suffering, wantonly inflicted; no standard by which we can measure the just compensation for wounded feelings, personal indignity, and public humiliation. The jury has passed upon this whole question, and with their verdict it must rest. Under the circumstances of this case, I have no legal right to set that verdict aside, and cannot do so.

It is probable that the jury allowed the sum of $400.87, the amount expended by plaintiff for physicians, nurses, and medicines during his recovery, and the further sum of $750 claimed by plaintiff for loss of time and expenses in hiring persons to attend to his business during his illness, and gave the further sum of $7,000 as general damages.

It was further urged that the court erred in not withdrawing from the jury all evidence relative to defendant's wealth; plaintiff having, during the trial, waived all claim for exemplary damages. Had defendant's counsel, at the time of the trial, asked that this be done, the court would undoubtedly have withdrawn such evidence from the jury, and instructed them to disregard it. But no such request was made, and it is too late now to urge it as error. If it was technically error, it was waived, and was wholly cured by the charge of the court to the jury.

The charge of the court was full, clear, and distinct. The jury was expressly instructed that all claim for exemplary damages was waived by plaintiff, and that they should only find, if they found for plaintiff, such sum as would compensate him for the expenses incurred by him during his illness, loss of time, and for the injuries sustained, including his physical suffering, mental anguish, and the indignity inflicted.

The charge, I believe, was in all respects correct.

The motion for a new trial is denied.