# GEORGE L. ELKINS

## *v.*

# PEOPLE OF PORTO RICO.

---

San Juan, Law, No. 622.

1. A new trial will not be granted because of newly discovered evidence when the same is merely cumulative.
2. Surprise regarding the line of evidence developed at a trial will not be considered as sufficient ground for setting the verdict aside when the alleged evidence is of a character that ought to have been foreseen by the party complaining.
3. A new trial ought not to be granted when the court is of opinion that the issues were well before the jury, and that the trial in and of itself was a fair one, and when the court cannot say that the verdict would probably be different, even with the alleged newly discovered evidence before the jury.
4. It is a well-settled rule that surprise may be, not that it must be, a ground for a new trial. It is always a matter of discretion with the court.

Opinion filed February 12, 1910.

*Messrs. Sweet & Wilcox,* attorneys for plaintiff.

*The Attorney General of Porto Rico,* for the island.

RODEY, Judge, filed the following opinion:

This cause is before us on a motion for a new trial. It was tried before the court and a jury, November 26th and 27th, 1909. It is an action for personal injuries, and the damages are laid in the sum of $5,800. The accident out of which the cause arose is alleged to have occurred on December 23, 1908, by reason of the motor car, in which plaintiff and a companion were riding on the public road of the defendant near Bayamon, becoming entangled with a telegraph wire that was, as alleged, negligently permitted to stretch, or hang across the road about a foot above the ground. This telegraph line belonged to the insular telegraph system, which is owned and operated by defendant, the people of Porto Rico.

The first issue in the cause was raised by a demurrer to the complaint on the ground that the people of Porto Rico could not be sued without their consent. This was argued with great ability by both sides, and we filed a rather lengthy opinion on the issue under date of September 7, 1909, wherein we held that defendant could not be sued without its consent, but that in this particular case, if the proofs on the trial should warrant it, or, in other words, if the facts brought the case within the terms of § 404 of the Political Code of 1902 of Porto Rico, that then the people of Porto Rico had by law consented that they might be sued.

The facts developed on the trial were about as follows: Plain-

Elkins v. People.

tiff had an automobile for sale, and went to the town of Toa Alta, with a view to selling it to a certain Doctor Moret, who lived there. He arrived about 9 o'clock in the morning, and, as he contends, was joined by the Doctor, who took a spin around the town with him to try the machine, the Doctor having charge of the guiding wheel, and that then both started out into the country with the machine. In their testimony both plaintiff and this companion claimed that this wire was stretched across the road about a foot above the actual surface, and that no flagman or flag, or any one to give notice of the danger, was upon the road, and that hence they ran into the wire, which completely demolished the machine, and injured plaintiff as he claims,—although the evidence as to any permanent injury was not very positive or satisfactory at the time of the trial. Plaintiff and his companion claimed also that no person was in sight at all when the accident occurred, and that they were exercising all due and proper care in speeding along the road at the time. The defense claimed, and several of their witnesses testified that plaintiff, when he arrived at Toa Alta, got out of the machine and went into the hospital or house where the Doctor was. That the Doctor had been drinking considerably all the morning previous to the arrival of plaintiff, and that he continued to drink brandy after the arrival of plaintiff until the bottle he was drinking out of was exhausted, and that he then sent a boy out to procure a bottle of rum, most of which was also used up before plaintiff and the Doctor started out to test the machine. These witnesses testified that the Doctor appeared to be under the influence of liquor before plaintiff arrived, and was a good deal more so as the parties started away. It was not to any extent in evidence that plaintiff himself was actually under the influ-

ence of liquor at all.   There was a good deal of other evidence on both sides of the case, and the whole case was argued to the jury, with great ability by counsel for both sides, yet the jury unhesitatingly found against plaintiff.   No complaint is made regarding the court's instructions to the jury, and after a re-examination of them we are satisfied that in that regard the cause was fairly submitted.

The grounds set out as a reason why a new trial ought to be granted are:

(1) That the evidence is insufficient to sustain the verdict, and that it is against the weight of it; (2) That it is against the law; and (3) Because of the unfair method adopted by defendant in charging intoxication of plaintiff's companion and himself, but not developing this claim or line of defense until, as contended, it was too late to afford plaintiff an opportunity to properly rebut it.

It is seldom that we have seen a more strenuous effort on a motion for a new trial than has been made by counsel for the respective parties here.

Counsel for plaintiff has procured, and filed in support of the motion, affidavits of five policemen who were supposed to have been on duty about the time of the accident at Toa Alta, and all of them swear that plaintiff did not go into the house of the Doctor at all, and that he did not drink, and that the Doctor did not drink, and neither of them were under the influence of liquor when they departed from the town on that morning.   The affidavits of Julian Marrero and José Julian Hernandez were also filed,—who say that they were riding along the road, and that the automobile passed them just before the accident occurred, and that there was no one on the road to give warning of

the dangerous position of the wire, etc. To counteract this, defendant filed the affidavits of one or two of the same policemen, who set forth that they did not understand the contents of their affidavits when they gave them to plaintiff's counsel, and further, defendant filed an affidavit from one Antonio Gonzales Galvarin, who states that he was in the hospital at the time, and that plaintiff and the doctor were there, and that the two men did drink considerably, particularly the Doctor, and that he (affiant) drank with them. Defendant filed several other affidavits tending to show that Marrero and Hernandez, the two other persons who made affidavits for plaintiff on this motion, and who pretended they were along the road at the time on horseback and saw the accident, were not, in fact, there at all, but were in the town of Toa Alta during all the morning of that day. They also filed an affidavit of one José de Diego, a cigar maker of Toa Alta, who states that he also was in the hospital, and that both plaintiff and his companion, the Doctor, took several drinks there, and remained about an hour. They also file the affidavit of Arturo Lopez, who in like manner swears that plaintiff and his companion did enter the Doctor's office, and that he saw both depart in the auto, and saw the affiant Hernandez in the town long after they had gone. Defendant also filed affidavits and police registers tending to show that the five policemen who made affidavits for the motion were on night duty at the time, and that it was their custom to retire when going off duty at six o'clock in the morning. That none of them were seen around the doctor's office or the automobile that morning, etc. An affidavit of Mr. Timpson, the superintendent of telegraph of the island, was also presented, stating that some time before the trial of the case he met one of plaintiff's coun-

sel in a restaurant, and informed him that Dr. Moret was in-
toxicated at the time of the accident, and hence it is contended
that plaintiff through his counsel had plenty of notice that intox-
ication would be proved to support a claim of contributory neg-
ligence in the plaintiff through his companion.

. We have gone entirely through this mass of affidavits in sup-
port of and against this motion for a new trial, and, with the
exception of Mr. Timpson's affidavit, the statements are abso-
lutely contradictory of each other, and we cannot but arrive at
the conclusion that several of the affiants have sworn to untruths.

From the careful examination we have just made of the whole
record, including these affidavits, and of the briefs of counsel,
and the law regarding motions for new trials, we cannot see that
there was during the trial any surprise such as would warrant
the granting of the motion.    The main issue was whether the
island, through its agents, negligently left this wire in the dan-
gerous position in which it was, without sufficiently guarding
against injury to people who passed on the highway.    There was
positive evidence in the cause that while the repair man was
inside the fence, fixing the wire, some distance away, that the
danger point was flagged, and that a boy was kept on the road,
who endeavored to stop plaintiff and his companion as they
speeded by, but that they paid no attention to him.    This was
corroborated by one witness, who said he came up from the
opposite direction and saw the boy signaling them.    There
was also evidence tending to show that plaintiff himself, imme-
diately after the accident, as soon as he could speak, accused
his companion, Doctor Moret, of being responsible for the mis-
hap.    It is pointed out to us by counsel for defendant that if
the affidavits of Marrero and Hernandez, who swear they saw

Elkins v. People.

the accident as they rode along the road, are true, they conflict with the testimony of plaintiff and his companion, both of whom testified positively during the trial that they passed no one, and saw no one at or near the scene of the accident, or for some distance either way from such point. Counsel for plaintiff, in his able brief in support of this motion, has exhaustively reviewed the law upon the subject, and made a commendable effort to apply it to the facts as a warrant for the motion, but, with all his ability, a careful reading of his argument does not convince us that he is entitled to have the motion granted. On the opposite side counsel for the island, without half the effort, easily demonstrates, because, as we think, the law is with him, that the verdict ought to stand. We cannot say that if we should grant a new trial the verdict would be any different. It would, as we see it, simply put before the jury a lot of cumulative evidence with reference to the intoxication of Dr. Moret, that would, as stated, be contradicted by the other side as indicated in these affidavits. All of the witnesses who testified as to the intoxication on the main trial were severely cross-examined, and both plaintiff and his companion, who were educated and intelligent men, contradicted the statements positively on the stand themselves. The jury might well have believed that plaintiff himself was not intoxicated, and that he was not in fact a drinking man, while they might well have believed the direct contrary of his companion Dr. Moret, and, of course, anything that tended to prove contributory negligence of Dr. Moret also went against plaintiff's right to recover as he, knowing the man's condition, went with him in the automobile, and permitted him to manage the guiding wheel of the machine. But apart from all this, it may well be that the jury paid no attention to this

question of intoxication at all, and that they took the evidence
of the boy and the bystander who testified that considerable effort
was made to signal plaintiff and his companion to stop and not
to run into the wire.    We have to look at the evidence in this
case coldly as we find it, and we do not think that any proper
announcement was made by counsel for plaintiff of any surprise
during the trial, and it is universally held that to avail a plain-
tiff, or whoever loses a case, advantage must be immediately
taken of surprise, and a voluntary nonsuit taken, or time re-
quested within which to give the party affected an opportunity
to rebut the unexpected evidence.    See 29 Cyc. Law & Proc. p.
871, notes and cases cited.    "A new trial will not be granted on
the grounds of newly-discovered evidence when such evidence is
merely cumulative, or is upon unimportant matters in the case,
or where, in the opinion of the court, such evidence, if produced,
would not affect the action or verdict of a jury."   Brown v.
Evans, 8 Sawy. 488, 17 Fed. 912; see also Chandler v. Thomp-
son, 30 Fed. 38; see also our opinion in Paitel de Morsommé v.
Yauco, 3 Porto Rico Fed. Rep. 405.

"The mere fact that a party was surprised by the testimony
of a witness is not ground for a new trial, but it must also be
shown that its effect was to deprive him of a fair trial."   Som-
mers v. Carbon Hill Coal Co. 91 Fed. 337.

A reading of the chapter under the title "Surprise" in Gra-
ham & Waterman on New Trials, vol. 3, pp. 75 et seq., informs
us that courts interfere in such cases with reluctance, and the
rule is laid down that surprise may be, not must be, a ground
for a new trial.

We have a distinct recollection of the facts in this case as they
were developed on the trial, and of the appearance of the

Elkins v. People.

witnesses on the stand, and of the ability with which plaintiff's counsel argued the case to the jury; and we cannot say that if all of the alleged evidence set forth in these affidavits was placed before the jury on a new trial the verdict would be any different. The law is that when the court takes this view of the situation the new trial should be denied.

Therefore, an order will be entered denying the motion.